Argued and submitted December 14, 1979, affirmed as
modified April 14, respondent's reconsideration denied
August 18, appellant's reconsideration granted; former
opinion modified (47 Or App 963, 615 P2d 412) August 18,
respondent's petition for review denied September 16,
1980 (289 Or 659), motion for recall of mandate granted;
former opinion modified (50 Or App 511, 623 P2d 1108)
February 17, reconsideration denied March 26, petition
for review denied April 21, 1981 (290 Or 853)

# In the Matter of the Marriage of
## ROGERS,
### *Respondent,*
### *and*
## ROGERS,
### *Appellant.*

## (No. D7809-15243, CA 14842)

609 P2d 877

[885]

Ira L. Gottlieb, Portland, argued the cause and filed the brief for appellant.

Kevin O'Connell, Portland, argued the cause for respondent. With him on the brief was O'Connell, Goyak, Hagen, Elliott & Krage, P.C., Portland.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

ROBERTS, J.

**ROBERTS, J.**

In this dissolution-of-marriage case, husband appeals from that portion of the trial court's decree which awarded a portion of husband's foreign service retirement benefits to wife, contending (1) that such distribution is prohibited by federal law and (2) that if the court could properly consider the retirement benefits as property it should be limited to the amount of husband's contributions during the marriage.

The parties were married for 20 years, during which time the husband was employed by the Agency of International Development, an agency of the United States Department of State. The parties and their children lived overseas for all but a few months of the marriage. Husband, during his 22 years of government service, has contributed approximately $22,000 to a retirement fund. If he terminates service, he can withdraw this sum or leave it in the fund until he reaches age 50, when he can begin to draw a pension. The amount of pension is based upon a percentage of final average salary and increases with every year that husband works until he reaches age 60 when retirement is mandatory (under present law).[1]

In addition to awarding spousal support and child support for the parties' three minor children, the trial court, in dividing the marital assets, awarded one-third of husband's retirement benefits to wife "to be

---

[1] Pertinent information on the retirement system is as follows: Husband began government service in 1957 and has paid into the retirement fund for 22 years. His experience was "military and general government service" as well as foreign service. He contributes 7 percent of base salary. He is eligible for benefits at age 50 with 20 years service. Husband is 46 years old.

Husband testified that if he retires at age 50 he would receive 50 percent of the average of the three highest paid years "in grade." (The differential pay for overseas assignment is not included.) For the last three years his base pay "averaged $35,000 plus." Husband testified he does not intend to retire at age 50. At the time of the trial he was preparing to leave for Abidjan, Ivory Coast. For every year after the first 20 years of employment, his expected benefits increase by 2 percent up to a maximum of 70 percent of the average of the three highest paid years. Maximum retirement benefits result when a person has paid into the fund for 35 years. For husband this will be another 13 years when he is 59 years old.

received in the same fashion as he receives the other two-thirds."

We address first husband's contention that such distribution is prohibited by federal law.

Relying upon 22 USC § 1104, husband contends that federal law prohibits this award to wife. 22 USC § 1104, as relied upon by husband provides:

> "None of the moneys mentioned in this subchapter [Foreign Service Retirement and Disabilty System] shall be assignable either in law or equity, or be subject to execution, levy, attachment, garnishment, or other legal process, except as provided in section 1004(c) of this title."

In making this argument, husband overlooks an amendment to this section by Executive Order effective September 15, 1978,[2] which added the following language:

> "(b)(1) Payments under this title which would otherwise be made to a participant or annuitant based upon his service shall be paid [in whole or in part] by the Secretary to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation. Any payment under this paragraph to a person bars recovery by any other person."

Thus, federal law specifically provides for the disposition made by the decree in this case.

A more difficult question is presented by husband's contention that the court, if it could consider the

---

[2] The amendment was made by executive order pursuant to 22 USC § 1065(a) which provides that when a law is enacted amending a provision of general applicability in the Civil Service Retirement System which was substantially identical to a provision of the Foreign Service Retirement System, the amendment will be deemed to extend to the Foreign Service Retirement System and the President is authorized to prescribe by executive order regulations to effectuate the conformance. The President's Executive Order was issued in order to conform the Foreign Service system to an amendment added to the Civil Service System in 5 USC § 8345.

retirement benefits as property, is limited to a division of that amount contributed by husband during the marriage.

This court has decided very few cases dealing with the treatment of retirement benefits in dissolution proceedings. The most recent case was *Roth and Roth*, 31 Or App 65, 569 P2d 693 (1977),[3] where it was held that husband's unvested right to a pension should not, under the facts of that case, be considered as a marital asset to be divided between the parties, particularly in light of the fact that the pension would be the fund for permanent spousal support.

Retirement benefits were also considered in *Anderson and Anderson*, 27 Or App 193, 555 P2d 816 (1976), *rev den* (1977), where husband's vested interest in retirement income was taken into account in denying husband a lien on the family home awarded to wife. In *McKibban and McKibban*, 21 Or App 39, 533 P2d 362 (1975), the availability to husband of retirement benefits accrued during the marriage was a factor in the award of a disproportionate amount of marital property to wife. In *Tann and Tann*, 12 Or App 441, 507 P2d 404 (1973), we held that the availability of retirement benefits was relevant to the amount of alimony paid, especially where the marriage was of long duration.

Because each of these cases turns on its own facts, none provides a definitive rule to guide our treatment of the facts before us. Due to the paucity of case law on the subject in this state, we have examined the case law of other jurisdictions for guidance in our disposition of the facts before us.

I

Before analyzing the various approaches to the disposition of retirement monies, it is important to define the terms "vested" and "matured" as they relate

---

[3] *Monaghan and Monaghan*, 45 Or App 535, 609 P2d 822 (1980), also dealt with retirement benefits but was decided on statutory grounds not material to this case.

to retirement benefits in dissolution cases. The Supreme Court of California provided the following comprehensive discussion of the terms in *In re Marriage of Brown*, 15 Cal 3d 838, 544 P2d 561, 126 Cal Rptr 633 (1976).

> "* * * Some decisions that discuss pension rights, but do not involve division of marital property, describe a pension right as 'vested' if the employer cannot unilaterally repudiate that right without terminating the employment relationship. * * * In divorce and dissolution cases * * * however, the term 'vested' has acquired a special meaning; *it refers to a pension right which is not subject to a condition of forfeiture if the employment relationship terminates before retirement. * * * [T]he term 'vested' in this latter sense [defines] a pension right which survives the discharge or voluntary termination of the employee.*
>
> *"As so defined, a vested pension right must be distinguished from a 'matured' or unconditional right to immediate payment.* Depending upon the provisions of the retirement program, an employee's right may vest after a term of service even though it does not mature until he reaches retirement age and elects to retire. Such vested but immature rights are frequently subject to the condition, among others, that the employee survive until retirement." (Emphasis supplied.) (Citations omitted.) (Footnotes omitted.) 126 Cal Rptr 635.

For purposes of analysis we conclude that there are three distinct periods in any retirement benefit plan. Retirement benefits may be non-vested, vested but not mature or mature. The facts of this appeal present us with a vested, but unmatured right to retirement benefits, *i.e.*, husband has the right to terminate employment immediately without losing his right to retirement benefits, but must wait until age 50 to begin drawing those benefits.[4]

II

The initial question we are confronted with is how a retirement benefit is to be treated by the court in a

---

[4] He would, of course, have an immediate right to withdraw the contributions made by him if he chose to forego the benefits.

property distribution plan. While some jurisdictions have held to the contrary, the great weight of authority in both community and non-community property states supports subjecting retirement funds or benefits to marital distribution. *See* Divorce and Separation, 24 Am Jur 2d § 932.5; Community Property, 15A Am Jur 2d § 53. Spousal Rights in Retirement Benefits, 16 Journal of Family Law 187 (1977-78). The authority for this position is particularly strong where the benefits have vested. *See, e.g., Payne v. Payne*, 82 Wash 2d 573, 512 P2d 736 (1973); *In re Marriage of Pope*, 37 Colo App 237, 544 P2d 639, 639-41 (1975); *Schafer v. Schafer*, 3 Wis 2d 166, 87 NW2d 803 (1958); *Pinkowski v. Pinkowski*, 67 Wis 2d 176, 226 NW2d 518 (1975), and *Pellegrino v. Pellegrino*, 134 NJ Super 512, 342 A2d 226 (1975).

The reasoning of these cases is that vested retirement rights are a valuable asset earned through contributions which would otherwise have been available to the parties during the marriage. Even where contributions have been made entirely by the employer, the courts have concluded that retirement benefits are a mode of employe compensation and as such are an earned property right of the marriage. As noted by the California Supreme Court in *Brown*, 126 Cal Rptr at 638:

> "* * * Over the past decades, pension benefits have become an increasingly significant part of the consideration earned by the employee for his services. As the date of vesting and retirement approaches, the value of the pension right grows until it often represents the most important asset of the marital community. * * * A division of * * * property which awards one spouse the entire value of this asset, without any offsetting award to the other spouse, does not represent [an] equal division of * * * property * * *."[5]

[5] For an analysis of California cases prior to *Brown*, *see* Retirement Pay: A Divorce in Time Saved Mine, 24 Hastings L Rev 347 (1973).

The *Brown* court was presenting an analysis of the treatment of non-vested retirement benefits as property of the marriage, a question which does not confront us here. However, the above argument is even stronger when applied to vested retirement rights.

In *McKibban* and *Anderson*, retirement benefits, while not actually divided, were treated as property which equalized the division of other items of marital property.

Although the courts in the above cases were necessarily considering the question of the proper treatment of retirement accounts in light of the facts before them, the holdings are often stated broadly as if always applicable to every possible combination of facts relevant to any retirement plan.

We think such a broad-brush approach is unwise and unwarranted because the details of various retirement plans and programs are almost infinite. As noted above, retirement rights can be non-vested, vested but not mature, or mature. Moreover, retirement programs can be funded entirely by employe contributions, entirely by employer contributions, or by a combination of employe and employer contributions. Some retirement plans permit lump-sum withdrawals; others may not. There are undoubtedly other variations. As noted by the California Court of Appeals:

"The computation and apportionment of a nonemployee spouse's interest in present or future retirement benefits on dissolution of marriage can often be abstruse. * * * Almost each case dealing with a different kind of retirement plan is *sui generis.* * * *" *In re Marriage of Adams*, 64 Cal App 3d 181, 184, 134 Cal Rptr 298 (1976).

The factual circumstances of different participants in exactly the same retirement program can vary radically. An employe who had been working for a short period of time—either a young employe or one who had just recently changed jobs—might have a very small retirement account balance; an older

employe who had been in the same job for many years might have a very large retirement account balance. However, if the older employe had just been diagnosed as having terminal cancer, the value of his or her "larger" retirement account might be less than the value of the younger, healthy employe's "smaller" retirement account.

Another source of uncertainty is that the courts are called upon to make a present evaluation and disposition of a future right. The future might be predicted, but can never be known; significant change is always a possibility. In this case, for example, present federal law requires husband to retire at age 60. However, given the trend toward raising or eliminating mandatory retirement ages, it is at least possible that law might be changed.

For all of these reasons, it appears to us to be impractical—if not impossible—to formulate a categorical rule about the appropriate treatment of retirement accounts in dissolution of marriage cases. Because there are so many variables, individual cases will have to be largely decided on their facts. It follows that litigants who contest the appropriate treatment of a retirement account in these cases must develop a full record of all of the relevant details.[6]

We thus decline at this time to hold that retirement benefits are per se marital *property* to be *divided* at the time of dissolution. Instead, we believe the better guideline is to regard retirement benefits as a marital *asset* to be *considered* in formulating the financial aspects of a dissolution decree. *Anderson; McKibban; Tann.*

### III

Having decided that retirement benefits are an asset to be considered in a dissolution proceeding, we

---

[6] ORS 107.105(2) provides:

"(2) In determining the proper amount of support and the proper division of property pursuant to paragraphs (b), (c) and (e) of subsection (1) of this section, the court may consider evidence of the tax consequences on the parties of its proposed decree."

turn to the question of how this asset should be treated. When should the fund be considered as an offset against other property and when should the contributions or benefits themselves be divided? Cases from other jurisdictions give us examples of a variety of forms of distribution.

The New Jersey court in *Blitt v. Blitt*, 139 NJ Super 213, 353 A2d 144 (1976), held that where husband had an absolute right to $24,500, which was 50 percent of total funds, all contributed on behalf of husband by employer, it was subject to distribution and wife was entitled to 50 percent of that sum, with distribution postponed until normal distribution to husband commenced.

In *Hutchins v. Hutchins*, 71 Mich App 361, 248 NW2d 272 (1977), the Michigan court returned the case to the trial court with only general guidelines to insure equity, stating:

> "In determining that the retirement pension is subject to an equitable distribution we are not directing an actual apportionment of that specific fund. Rather, the amount thereof must be examined and valued as one element to be included in determining the entire assets to be allocated between the parties. In so including it, the trial judge will fix such percentage or portion thereof, which under the existing circumstances is equitable." 248 NW2d at 277.

In *In re Marriage of Anderson*, 64 Cal App 3d 36, 134 Cal Rptr 252, 253 (1976), the court was more specific.

> "* * * The increase [of the benefits after dissolution] is not necessarily entirely his separate property because the amount of the pension is dependent upon the total number of years of service. Thus the first few years of service (during the marriage) must be given just as much weight in computing total service as the last few years (after separation)."

In *Anderson* the husband had 26 years and 9 months of service with his employer and the parties had been married all that time. Husband could retire after 30

years of service. Applying the rationale set out above, the court ordered that

> "* * * petitioner husband shall pay to respondent wife as long as she lives that portion of the total monthly pension which equals one-half of the ratio of 26 years 9 months to the total number of years petitioner has served with [employer] at the time of his retirement and that jurisdiction be retained by the trial court to make such determination and supervise distribution at the appropriate time in the future. * * *" 134 Cal Rptr at 254.[7]

New Jersey, a non-community property state, applies the same formula, but the percentages depend upon the circumstances of a particular case. In *Kruger v. Kruger*, 139 NJ Super 413, 354 A2d 340 (1976), the court determined that husband had spent 343 months in military service before he started to receive retirement pay and he was married 213 months of that time. The distribution portion was 213/343 (about 62 percent) of the total benefits. The court awarded wife one-third of the amount calculated by the 213/343 formula instead of one-half because it took into consideration the fact that husband would pay a tax on all the retirement income.

From these examples it is obvious there is no clear-cut method of determining an award to the non-employe spouse which represents that spouse's interest in the retirement benefits. However, these examples do suggest certain guidelines.

---

[7] This so-called "time rule" has been applied in a number of other California cases. *See In re Marriage of Adams, supra; In re Marriage of Brown*, 15 Cal 3d 838, 544 P2d 561, 126 Cal Rptr 633 (1976); *Bensing v. Bensing*, 25 Cal App 3d 889, 102 Cal Rptr 255 (1972). Another method of apportionment that has been suggested as useful is the insurance apportionment rule. *See* 9 U of SF L Rev 635 (1975). This method applies a percentage based upon the amounts paid into the fund during marriage as a percentage of total amounts paid. *Gettman v. City of L. A. Dept. of W. & P.*, 87 Cal App 2d 862, 197 P2d 817 (1948); *Modern Woodmen of America v. Gray*, 113 Cal App 729, 299 P 754 (1931). It appears this method has been used in the computation of spousal interest in death benefits but not in retirement benefits.

For example: (1) The distribution should generally be based on the contributions made during the marriage. (2) The courts should continue to strive to disentangle the parties as much as possible by determining, where equitable, a sum certain to be paid rather than a percentage based upon expected future contingencies. (3) In determining whether a lump sum award is appropriate, courts should consider the burden it would place on the paying spouse in view of required child support, spousal support, and other property distribution. (4) Where courts determine that the parties will share in the benefits on a proportional basis, the parties should also share the risks of future contingencies, *e.g.*, death of the employe spouse or delayed retirement of the employe spouse, and payment should be to the receiving spouse as the employe spouse receives the retirement pay. (5) Courts should consider, where appropriate, an award of a portion of retirement benefits where other property awarded is not adequate to make an equitable distribution.

## IV

We turn now to the facts of this case.

At the time of the dissolution husband's retirement benefits were vested: he had fulfilled the requirement that he be employed for 20 years but could not receive the benefits until reaching age 50, four years after the dissolution, at which time the benefits would mature.[8]

---

[8] We note that the facts of this case are distinguishable from those in *Roth and Roth, supra,* where it was held that to give wife a share of the retirement funds in addition to awarding permanent spousal support would allow wife a double financial benefit from the same fund and should be disallowed. The retirement monies in that case had not vested and husband would only receive benefits if he reached age 65. Further, husband had no right to the corpus of the fund. Wife in that case, who was 54 and in ill health, was awarded permanent spousal support.

In the case before us husband was ordered to pay "for an indeterminate period of time the sum of $600 per month as and for alimony to [wife]," and wife, in turn, was instructed to "inform her attorney of the acquisition of any job, and upon inquiry by [husband] of her later inform him as to her gross and net income." Wife is aged 45 and is certified to teach although in the 20 years she spent overseas with her husband, she taught full time for only two years.

The major assets of the parties, other than the retirement benefits, consisted of vacant land in Washington County and various items of valuable jewelry. The estimated values of the land and the jewelry were approximately equal. Wife was awarded the land and husband the jewelry, which he had requested. There is no other property which could be awarded to wife as an offset for her interest in the retirement benefits.

Because of the long duration of the marriage and because contributions to the plan were made during all those marital years, we conclude an award of one-half of the employe contributions, *i.e.*, $11,000, would not equitably represent the property right wife has in the benefits. A better result would be a division similar to that ordered by the trial court. However, the trial court's division does not take into consideration the fact that husband undoubtedly will contribute greater amounts as his salary increases, which could result in a larger total contribution after the dissolution than before. Nor did the trial court consider the fact that husband's retirement benefits will be based on his highest salaries, which, no doubt, will occur closest to retirement, or that husband's percent of salary can increase to 70 percent of his final average salary, or that husband may have tax liability on all the retirement income.

We conclude a more equitable method of computation is an award to wife of one-half of the benefits husband was eligible to receive at the time of dissolution had he also terminated his employment as of that

This case is, therefore, different from *Roth* in at least two respects: (1) husband in this case has a vested right to the corpus of his retirement fund, contributions and to benefits, and (2) wife is healthy, able to work and unlikely to require spousal support for the rest of her life. Wife should not be required to forego her interest in this vested property right on the chance that she will require spousal support at the time husband begins to collect his benefits. A change in husband's financial circumstances can always be used as a basis for reducing spousal support in the future, but if wife is denied her vested property right in the retirement fund and loses her spousal support due to her owned improved circumstances, she will net zero.

date, recognizing, of course, that the retirement benefit payments would not commence until he reached age 50, four years after the dissolution. Testimony of husband established that his base salary for the last three years averaged approximately $35,000 annually at the time of dissolution. If he had terminated his employment at that time, 54 percent of his salary would have resulted in $18,900 annually in benefits at the age of 50. One-half of that, which we identify as wife's interest, is $9,450 annually. However, because we anticipate that husband will have the tax liability on this amount, an adjustment of that figure is appropriate. Accordingly, we modify the decree to award to wife as her interest in the retirement benefits $500 per month, payable to her from the total benefits, as and when husband receives them.

We note the court's language: "* * * This is a property division. However, at the time respondent begins to receive his retirement benefits, the adequacy or superfluity of [her separate] alimony may then be re-examined." We do not disturb that portion of the decree.

Affirmed as modified. No costs to either party.