Argued and submitted September 4, affirmed December 9, 1981,
rehearing denied January 12, 1982

In the Matter of the Marriage of

FRANZKE,
*Petitioner on Review,*

*and*

FRANZKE,
*Respondent on Review.*

(No. D13-784, CA 17673, SC 27716)

637 P2d 595

Larry A. Brisbee, Hillsboro, argued the cause and filed the brief for petitioner on review.

Clifford W. Powers, Portland, argued the cause for respondent on review. With him on the brief was Powers & McCulloch, Portland.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson and Tanzer, Justices.

TONGUE, J.

## TONGUE, J.

This is a suit for dissolution of a marriage. The assets of the parties include three "accounts" belonging to the husband with his law partnership: a Keogh retirement account, an investment fund, and a capital account, having a total "face value" of $73,770.[1] In considering the values of these accounts for the purpose of making an equal division of the marital assets, as agreed by the parties, the trial court undertook to determine what it referred to as the "present value" of these accounts to be $13,000, for the reason that the husband would not have the benefit of them until he retired from his law firm in 20 years.[2]

In modifying the decree of the trial court on appeal by the wife, the Court of Appeals held that the value of these accounts for the purpose of making an equal division of the marital assets was the sum of $73,770, which represented the then "present amount accumulated in the three accounts," rather than $13,000, as held by the trial court to be the "present value" of those accounts. 51 Or App 35, 41, 624 P2d 632 (1981).[3] We allowed the husband's petition for review to examine the question of how retirement accounts belonging to the husband should be considered, both in

---

[1] At various times throughout this opinion we shall refer to one or more of the accounts in question as "retirement accounts" because that is the way they are described variously in the record and arguments. These accounts are not "retirement accounts" in the sense of being pensions payable for a period of years or for life upon husband's retirement. Instead, the "investment" and "capital" accounts to which we refer are investments of "after-taxes" capital, the enjoyment of which by the husband is postponed until he retires from his firm. His Keogh account, as discussed, *infra,* in the text, is a sum of money accumulated from his contributions from earned income upon which income taxes are deferred until such time as he may elect to receive the money as taxable income under the tax laws. Unlike a pension, that asset will be reduced to zero at such time as he has withdrawn the final balance under whatever schedule of payments may become applicable. In other words, the amounts in these "retirement accounts" are finite; they do not afford to husband any amounts beyond contributions and the appreciation, if any, of those accounts until they are exhausted.

[2] The decree of the trial court also provided, among other things, for payment by the husband to the wife of $1,000 per month as support payments for a period of five years.

[3] The Court of Appeals also modified the award by the trial court of support payments by its holding that such payments of $1000 per month should not be terminated after five years, but should continue "until she dies, or until further decree of the court."

making a division of marital assets and in determining the obligation of the husband to support his wife.[4]

Because there are substantial differences between at least two of the three accounts, each of them will be discussed separately.

## The Husband's Three Accounts.

### 1. *The Keogh retirement account.*

So-called "Keogh plans" are retirement plans which offer income tax advantages to those who contribute to such plans in that annual contributions to the fund provided under such a plan are exempt from federal income taxes payable by such persons and are deductible from the gross income of such persons for federal income tax purposes. When a person who contributes under such a plan retires, the amounts then payable to him under the plan are taxable to him as income.[5]

Keogh plans are of two basic types: (1) "defined contribution" plans, and (2) "defined benefit" plans.[6] Under a "defined contribution" plan, the benefits payable on retirement are based upon the amount of the contributions, but also include any income earned by the fund to which such contributions have been made.[7] Under a "defined benefit" plan, the plan "sets the retirement benefits" and the contributions must be enough to produce those benefits.[8]

---

[4] In a letter to the parties prior to oral argument, the parties were requested to submit arguments on the following questions:

"1. What, if any, general rule should this court adopt for consideration of Keogh, I.R.A., Professional Corporation, etc. retirement funds as marital assets?

"2. If the present value of such funds is allocated about equally in dividing marital assets, should the court avoid considering the fund participant's share in the fund as an asset for the purpose of determining that spouse's obligation to the support of the other spouse?

"3. In this case does the decision of the Court of Appeals give the wife a 'double bite' at these kind of assets?"

[5] For a detailed description of Keogh plans, *See* IRS Publication 560, Tax Information on Self-Employed Retirement Plans (Rev. June 1980).

[6] *See* IRS Publication 560, *supra,* n. 4.

[7] *Id.*

[8] *Id.*

As previously stated, the trial court undertook to determine a "present value" of the husband's interest in this Keogh plan for the reason that he would not receive any benefits from that plan until he retired from his law firm in approximately 20 years. That determination was made by the trial court by computing the amount of money which, if invested at that time at 9% compound interest, would in 20 years increase to an amount equal to the balance in the account attributable to contributions made by the husband as of the time of the dissolution of the marriage.

This might have been correct if the husband, upon retirement in 20 years, would then be entitled to receive no more than the amount of his contributions to the fund and would not then be entitled to receive any of the interest or other earnings from the fund which resulted from such contributions. If, however, this Keogh plan is a "defined contribution" plan, under which, upon retirement, the contributor would receive not only the principal amount of his contributions to the fund, but also any income earned by the fund, such as from interest resulting from the investment of the money in such fund, then such a computation by the trial court of the "present value" of this husband's contributions to the fund would be in error.

The reason why such a computation would be in error under such a plan is well-stated by the Wisconsin court in *Bloomer and Bloomer*, 84 Wis 2d 124, 267 NW 2d 235 (1978), although involving a variation of a "defined contribution" plan which was not a Keogh plan and although involving a different amount in contributions, rate of interest, and number of years before retirement. That court said (at 132-33) that:

"Assume, for the sake of illustration, that Herbert retires at age sixty-five, twenty-three years after the trial in this case. If the value of Herbert's interest in the fund would be $8,047.61 *when distributed* in twenty-three years, then the trial court would undoubtedly be right in discounting the $8,047.61 for twenty-three years at 5 percent. The error in this method is that the $8,047.61 will continue to accrue interest over the next twenty-three years. Assuming a 5 percent rate of growth, the value of the fund will approximately triple over that period. If we were to take the

approximately tripled figure, twenty-three years in the future, and then discount *that* figure at 5 percent, we would end up where we started, with a present value of approximately $8,047.61."

It is not entirely clear whether this husband's Keogh plan is a "defined contribution" plan under which, upon retirement, he would receive not only the principal amount of his contribution, but also any interest income earned by the fund, or whether it is a "defined benefit" plan. This husband testified, however, that the maximum amount that he was permitted to contribute each year under the plan was $7,500. Annual contributions under "defined contribution" Keogh plans are presently limited to $7,500, whereas there is no such limitation on contributions under "defined benefit" Keogh plans.[9] No testimony or other evidence was offered by the husband to support a finding by the trial court that this Keogh plan was other than what it appears to be as the result of such a $7,500 limitation. On the contrary, the husband offered in evidence a schedule of assets listing his interest in this Keogh plan as having an "estimated value" of $49,145.99, which is the total of the husband's contributions, plus earnings or interest as of August 31, 1979.

■  Under this record, and for these reasons, we hold that there was no evidence to support the finding by the trial court that the value of the interest of this husband in this Keogh plan was any amount other than $49,145.99. For the same reasons, we hold that the Court of Appeals did not err in finding that this amount represented the value of that marital asset for the purpose of making a division of such assets between the parties, although the Court of Appeals may not have articulated proper reasons for that finding.

In so holding, we recognize, as observed by the Court of Appeals in *Rogers and Rogers,* 45 Or App 885, 609 P2d 877 (1980), modified 47 Or App 963, 615 P2d 412 (1980), *rev den* 289 Or 659 (1980), at 892:

"* * * the details of various retirement plans and programs are almost infinite. * * * retirement rights can be non-vested, vested but not mature, or mature. Moreover,

---

[9] *Id.*

retirement programs can be funded entirely by employe contributions, entirely by employer contributions, or by a combination of employe and employer contributions. Some retirement plans permit lump-sum withdrawals; others may not."

and (at 893) that:

"Because there are so many variables, individual cases will have to be largely decided on their facts. It follows that litigants who contest the appropriate treatment of a retirement account in these cases must develop a full record of all of the relevant details."[10]

Very little evidence of such a nature was offered in this case.

2. *The investment account.*

The husband's second account with his law firm is an investment account called the "Hartportco" account, in which he had an interest in the sum of $14,480.62. The husband testified that this account was "sort of the investment capital account of the partners" and that "it [was] invested in a way that keeps it relatively available to the firm if they need it, but it is part of the capital account."

■　　　This account, as a part of the capital account of the partnership, presumably could not be withdrawn by the husband until he retired from the law firm. At that time, however, he would be entitled to payment of his share of this separate investment account, as a part of that capital account, which would include any interest or other income resulting from the investment of the funds in that account. It follows, in our opinion, and for the same reasons as previously stated with reference to the husband's Keogh account, that the trial court erred in attempting to reduce the value of that account to its "present value" and that the Court of Appeals properly held that the "estimated value" of that account in the sum of $14,480, as set forth in the schedule of assets submitted by the husband, was the

---

[10] *See also* note 1, *supra.*

We have not overlooked *McCarty v. McCarty,* __ US __, 101 S Ct 2728, 69 LEd 2d 589 (1981), holding that federal law precludes a state court from dividing military non-disability retirement pay upon dissolution of a marriage under state community property laws. That decision, however, was based upon the interpretation of federal statutes and the effect to be given those statutes in such a case.

proper value of that account for the purpose of making a division of the marital assets in this case.

3. *The husband's capital account.*

The remainder of the husband's capital account in the partnership, excluding that part of the capital account which had been invested in a separate account, i.e., the "Hartportco" account, was also not payable to the husband until he ceased to be a member of the partnership.

The husband testified that he would receive only the principal amount in that capital account and would receive no additional amounts representing interest or other income from that account. In the schedule of assets submitted by him at the time of trial, however, he listed this asset as having an "estimated value" in the sum of $10,145 at that time.

Even though the husband, upon retirement, would receive only the principal amount in that capital account and would receive no additional amounts as interest or other income from that account, if he withdrew from the partnership immediately after the trial of this case, he might be entitled to payment of the full sum of $10,145, rather than the "present value" of that amount, computed on the assumption that he would retire only after twenty years. Also, during the period pending his withdrawal or retirement from the partnership, he might have been entitled to make "drawings" against his capital account. In addition, during the interim he might have the use of the monies and other assets represented by the capital account.

In the absence of further evidence in this case, however, we hold that the Court of Appeals did not err in its holding that the value of the husband's capital account at the time of the dissolution of this marriage was the sum of $10,145, which was the amount listed by him as the "estimated value" of that account as of the time of the trial of this case.

## The Retirement Accounts and the Support Payments.

In addition to the monthly payments awarded to the wife to "equalize" the value of the marital assets awarded to the husband, the decree of the trial court

awarded to the wife support payments of $1,000 per month for five years. The Court of Appeals affirmed the amount of these monthly support payments, but held that such payments should continue "until (the wife) dies, or until further decree of the court."

The husband contends by his petition for review that by including his retirement accounts in the property distributed between the parties and also awarding permanent support payments to the wife, the effect is to give the wife a "double benefit" from these accounts. In support of that contention, he cites decisions by the Court of Appeals in *Roth and Roth,* 31 Or App 65, 569 P2d 693 (1977); *Monaghan and Monaghan,* 45 Or App 535, 609 P2d 822 (1980); and *Vinson and Vinson,* 48 Or App 283, 616 P2d 1180 (1980).

*Roth* and *Vinson* are clearly distinguishable on their facts. In *Monaghan,* however, the Court of Appeals said, at 538:

"The trial court awarded the wife one-half of the husband's 'accrued retirement benefits' as of the date of the trial 'in the Public Employees Retirement System.' The one-half is computed to be $9,750 and is included in the total property award of the wife in the amount of $42,256 quoted above.

"The husband was eligible to retire with 30 years service as of July 1, 1979, with a monthly pension of approximately $550. He did not testify that he intended to take early retirement. The wife has suggested in her brief in this court that the appropriate procedure is to place the retirement fund on notice by a copy of the decree, and when the payout occurs she will be entitled to one-half of the husband's interest in the fund as of the date of the trial (March 7, 1979)."

and held (at 539) that:

"When the husband retires he may elect to receive a monthly pension or cash lump sum settlement. In either event the husband will need money received from PERS to help him pay the permanent spousal support to the wife. To allow the wife permanent support beyond the husband's retirement date would not be justified except for the vested funds in PERS. To award the wife both a judgment equal to one-half of the cash balance accrued in PERS and permanent spousal support would in effect allow the wife a double benefit from the same financial fund."

The holding in *Monaghan* has its limits, however. It does not state an inflexible rule that it would always be improper to award permanent support payments to the wife in a case in which retirement benefits are considered in valuing and dividing marital assets. In *Monaghan* the husband was soon to retire, and that case involved a pension plan which was the primary source of income from which to pay support. Also, *Monaghan* was concerned with a "true" pension plan, rather than the kind of "accounts" involved in this case. (*See* note 1).

The support obligation in this case exists independently of the existence of a Keogh, investment or capital account and those accounts are not the husband's source for making support payments. Inclusion of the accounts in the evaluation of the parties' assets will not materially diminish the husband's capacity to earn and to pay support. *Compare Haguewood and Haguewood,* 292 Or 197, 638 P2d 1135 (1981).

In cases involving marriages of long duration, it is not always improper for a court to divide the marital assets equally, with an award of one-half of such assets to the husband, to include all or most of the income-producing assets, such as income-producing real property or a business or investments producing interest or dividend income, and also award permanent monthly support payments to the wife. Yet in such a case the effect of such a decree is to require the husband to make support payments from the same assets which were included as assets to be awarded to him for the purpose of computing an equal division of the assets between the parties. Thus, the fact that in such a case the wife would have a "double benefit" from such assets would not, of itself, require a holding that it would be error for a court to enter such a decree in such a case.

We see no reason why a different result is required solely because the income-producing asset awarded to the husband is a retirement fund, instead of an investment producing interest or dividend income, particularly when, as in this case, the husband not only retains exclusive ownership of that fund, but will also receive money from such a fund upon retirement.

As stated by the California court in *In re Marriage of Epstein,* 24 Cal 3d 76, 154 Cal Rptr 413, 592 P2d 1165 (1979), at 1174 n. 14:

> * * * [E]ven if a future award of spousal support must come from husband's half of the community property there is no requirement excluding such property as a source of that support. As the Court of Appeal below noted, 'in every case where one spouse receives permanent spousal support from the other spouse, the source is from the separate property of the paying spouse, including * * * earnings or property which were once the community property of both spouses.' Husband's financial position may be re-examined if necessary at the time of his retirement in light of both parties' circumstances."

■    In our view, the question to be decided in such a case is not whether an award of permanent support to the wife will result in such a "double benefit" to the wife. Instead, the questions to be decided in such a case are: (1) whether, considering all of the facts and circumstances, including that fact, an award of permanent support to the wife is appropriate, and (2) whether, if appropriate at the time of entry of the original decree of dissolution, there should be a modification of the terms of such a decree upon the retirement of the husband, depending upon the circumstances of the parties at that time. *Cf Rogers and Rogers, supra,* 896 n. 8.

## The Award of Permanent Support to the Wife in this Case.

Finally, it is contended by the husband in the petition for review that it was improper for the Court of Appeals to require payment of permanent spousal support in this case rather than support for a period of five years, as ordered by the trial court. In support of that contention, the husband states that "[t]he courts of this state have consistently stated that it is the goal of the courts in cases of this kind to either end or reduce the support-dependency relationship as soon as reasonably possible," citing *Grove and Grove,* 280 Or 341, 353, 571 P2d 477 (1977), among other cases. He also notes that this wife is "relatively young (43 years), is capable of earning a living, is in fact working at least part time, is in good health and has no familial responsibilities in terms of child care."

On her appeal from the decree of the trial court awarding her monthly support payments of $1,000 for a period of five years, it was contended by the wife that these payments should be increased to $2,000 per month and made "permanent." In support of that contention, she noted that her husband is a full partner in the largest law firm in Oregon; that his income for 1977 was $97,928, for 1978 it was $85,283, and for 1979 he received $139,291; that the parties had enjoyed a high standard of living, with average monthly living expenses of approximately $3,000; that the husband was awarded the family home with the result that the wife would endeavor to rent or buy a condominium; that her annual income from her job was $8,700 (at $725 per month), and that her estimated monthly expenses exceeded $2,500.

In resolving these conflicting contentions, the Court of Appeals noted (at p. 41) that where a marriage is of long duration and the parties have disparate earning capacities, permanent spousal support has been awarded in order that the dissolution will not have an overly disproportionate impact on the disadvantaged spouse, citing *Grove and Grove, supra,* among other cases. The court then concluded that under the facts of this case the husband should contribute $1,000 per month to the support of his wife, to continue "until she dies, or until further decree of the court." (ORS 107.135(1)(a)).

ORS 107.105(1)(c) provides that, in making provision for the support of a spouse, the court "* * * shall consider the following matters:

"(A)  The duration of the marriage;
"(B)  The ages of the parties;
"(C)  Their health and conditions;
"(D)  Their work experience and earning capacities;
"(E)  Their financial conditions, resources and property rights;
"(F)  The provisions of the decree relating to custody of the minor children of the parties;
"(G)  The ages, health and dependency conditions of the children of the parties, or either of them;
"(H)  The need for maintenance, retraining or education to enable the spouse to become employable at suitable work or to enable the spouse to pursue career objectives; and

"(I)   Such other matters as the court shall deem relevant."

■   Considering the wife's employability, the length of the marriage, the present disparity in earning capacity, and the fact that modification of the support terms of the decree is possible upon or before the retirement of the husband, we think that an award to the wife in this case of $1,000 per month as permanent spousal support was appropriate. It follows, in our opinion, that it was not error for the Court of Appeals to so modify the decree of the trial court under the facts of this case. As previously noted, if the circumstances of the parties change, the provisions of the decree may then be modified.

The decree of the trial court, as modified by the Court of Appeals, is affirmed.

Affirmed.

Costs to Respondent on Review.