In the Matter of the Marriage of

SANDS,
*Respondent,*
*and*
SANDS,
*Appellant.*

(No. D8004-63516, CA A21468)

651 P2d 1387

Jerold L. Billings, Portland, argued the cause and filed the brief for appellant.

Ira L. Gottlieb, Portland, argued the cause for respondent. With him on the brief was Ron D. Bailey, Portland.

GILLETTE, J.

Joseph, C. J., dissenting.

## GILLETTE, J.

Husband appeals from a dissolution decree, contending that the trial court erred in determining the present value of his pension rights without any evidence of that value and in awarding wife permanent spousal support, while at the same time giving her a disproportionate share of the marital assets.[1]

In awarding the pension plan, the court stated:

"* * * There are several problems. One of them is the pension, you know, and everyone in this courtroom knows that $380 a month, which he's entitled to receive right now at age 45 over the rest of his life, runs to a significant sum of money. I don't know how to discount that. I'm not an actuarial [sic] or I'm not an economist and I don't know what percentage to apply to its present day value, which is unknown, because I haven't heard any evidence on that and I can't take judicial notice, but in my mind I have a hunch that I'd like to be able to assure myself — and I think everybody in this room would be — of $380 a month without doing any other work for that and being free to go out and train himself in a new job just like she's free to at 43. He can go out and find a new job and she can go out and find a new job and together they can split the $380 a month. I don't know how to handle that because I don't know what it's worth, but anyway, the Court's aware of that and I am grasping with it.

"* * * * *

"I don't know what his pension is worth.

"* * * I think his retirement, if it were reduced to present day value, has to have a value of around $35- to $40,000. And I'm going to give him his retirement free and clear of any interest of her."

By awarding husband his pension plan valued that way, the court made an apparently equal division of the marital assets. However, there was no evidence of the present value of the pension plan, and it was error to give it a value without that evidence. *Palmerton and Palmerton,* 56 Or App 105, 110, 641 P2d 81 (1982).

---

[1] Husband additionally assigns as error the trial court's "apparent" use of his pension both as an asset and as a source of future alimony. The argument in support of this assignment applies as well to the claim that the court erred in awarding permanent spousal support, and we will treat the two assignments as one.

The question of what to do to correct that error is a difficult one. We have the power and the duty to exercise *de novo* review, ORS 107.405, but the necessary prerequisite for that exercise is an adequate record. There is no way we can improve the quality of the evidence brought to us — and in this instance there is no evidence of the valuation of what may well be the most valuable asset involved in the distribution of the marital estate. As we see it, we have three available approaches, none of which is altogether satisfactory:

(1)  If we simply ignore the pension asset, then the reallocation that we would have to make as a consequence would materially reduce wife's allocation and would, in fact, materially increase the *effective* award to husband. That is, husband would retain the value of his pension (whatever that may be) and would also be entitled to share approximately equally with wife the assets for which there is value evidence.

(2)  Under *Rogers and Rogers,* 45 Or App 885, 609 P2d 877, 47 Or App 963, 615 P2d 412, *rev den* 289 Or 659 (1980), *modified* 50 Or App 511, 623 P2d 1108, *rev den* 290 Or 853, 642 P.2d 307 (1981), we could award the wife an appropriate share of the valued assets of the value of his presently vested entitlement to pension payments ($380 a month) to be paid on his retirement on or after he reaches age 60. He is now 45; she is 43. Wife has never asked for an aliquot part of the pension, *per se,* and she might have to wait as much as 15 years before she could enjoy this benefit.[2]

(3)  Finally, to avoid either of these alternatives, we could send this case back to the trial judge for the taking of additional evidence. The dissent argues for this approach. One could argue that this would be as fair a disposition as can be made, and we would join in it wholeheartedly were it not for the fact that, in order to achieve that result, we would be making much too free with a very scarce resource — judicial time.

---

[2] Although the $380 per month value is adequately supported in the record, we know little more than that value about the pension. For example, we do not know whether it would be possible for husband somehow, under the pension plan, to defeat her entitlement.

This dissolution petition was filed by wife on April 30, 1980. The petition specifically mentioned the possibility that husband might be the recipient of benefits from one or more pensions. By that time, the saga of *Rogers and Rogers,* 45 Or App 885, 609 P2d 877, 47 Or App 963, 615 P2d 412, *rev den* 289 Or 659 (1980), *modified* 50 Or App 511, 623 P2d 1108, *rev den* 290 Or 853, 642 P2d 307 (1981), *supra,* had begun — our initial decision was announced on April 14, 1980. By the time of the filing of the petition, therefore, the issues now confronting us — valuation and treatment of pension benefits — were on the minds of bench and bar. This was all the more true on May 27, 1981 — the day this case was tried. By that time, all of our various opinions in *Rogers* had been announced, and the Supreme Court had denied review. *See also Franzke and Franzke,* 51 Or App 35, 624 P2d 632, *affirmed* 292 Or 110, 637 P2d 595 (1981). The parties therefore had to be aware of the issue of valuation of retirement benefits.

Despite their awareness, neither party in this case chose to put on evidence of the value of husband's pension plan. There could be many reasons for the decision not to put on such evidence, the expense of expert witnesses not least among them. Whatever the reason or reasons, however, *the parties chose to try the case this way.* That may not have been the wisest choice either could have made, but it is the choice both parties did make.

The dissent argues that, unless the case is remanded and further evidence taken, only the two previously discussed options are open to us — *i.e.,* allocating an aliquot share of benefits to wife under *Rogers and Rogers, supra,* or disregarding the value of pension entirely. That is true, but it proves little because, on remand, the parties may *still* — for whatever reason — decline to put on further evidence and the trial court will then be left to do what we should do now. The dissent, in a commendable effort to be fair to these parties, would produce a result which is "unfair" to everyone else — not only to the trial court (and, potentially, this court on a new appeal) hearing the case again when once should have been enough, but also to other litigants who would have to wait that much longer because this case must be retried. We should not, in the future, remand cases such as this on the basis of an

"inadequate" record when the parties had every opportunity to supply evidence the first time around but chose (for whatever reason) not to do so.

Faced with the two remaining alternatives, neither of which is entirely satisfactory, we adopt the *Rogers* approach. The record in this case, while it establishes no present value for husband's pension, does establish that it is presently vested and will pay him at least $380 per month on retirement, even if he were to retire from his trade now. Paragraph 5 of the decree of dissolution is modified to read as follows:

"5. Husband is awarded his pension plan through the Linoleum Carpet and Soft Tile Layers Union #1236, subject to the following interest in wife: wife is awarded $190 per month, to be paid to wife by husband as and when he receives pension benefits, but in no event later than husband's sixtieth birthday, as a property division. Husband is also awarded the contract for sale of Half and Half Tavern, subject to the encumbrances thereon including $5,000 owed William Pascoe; and the 1979 Toyota Celica automobile, subject to the encumbrance thereon. Husband shall hold wife harmless from any encumbrances or obligations on property awarded husband."

Our adjustment in the decree, giving no present value to the pension but dividing its fruits approximately equally, leaves the property division roughly 2 to 1 in favor of wife.[3] We decline to make a further adjustment, however, because, in light of the parties' relative earning capacities and the duration of the marriage, we believe awarding the wife the "long half" of this small marital estate is justified. *See, e.g., Halvorson and Halvorson,* 48 Or App 887, 618 P2d 20 (1980).

Husband also argues that, because wife was awarded one-half of his pension rights in addition to spousal support, wife will receive a "double benefit from the same financial fund." A spouse may receive a "double benefit" from a retirement fund awarded to the other spouse without the award being *per se* inequitable. *Franzke and Franzke,* 292 Or 110, 119, 637 P2d 595 (1981). We

---

[3] Husband's brief suggests the ratio is *3* to 1, but ignores the trial court's conclusion — with which we concur — that husband had failed to acknowledge assets worth $10,000.

decline to reduce or eliminate spousal support at this time. Husband may, at the time he begins to receive pension benefits, seek to have the amount of spousal support reconsidered. *See Rogers and Rogers, supra* 47 Or App at 966.

Decree modified. No costs to either party.

**JOSEPH, C. J.,** dissenting.

This case is an example, and one which is replicated endlessly in our opinions, of the absurdity of a system which gives this court the power and the duty to exercise *de novo* review. The parties made their record in the trial court. The trial judge made an error *of law,* in that it decided an issue in the case in the face of a total absence of evidence on the issue. The trial court intended to reach an equal division of the marital assets. The erroneously decided issue was fundamental to that result. Husband appealed. On *de novo* review, the majority awards wife an interest in the property as to which there was *no evidence* of present value, that award to be enjoyed, if at all, 15 years in the future.

Let us be very certain that we understand just what the majority achieves. The trial court was seeking an equal division of the marital estate. That was a proper objective. The majority has now achieved a result that it acknowledges gives wife at least twice as much of the marital property as husband gets, and perhaps three times as much. If there was a burden of proof to prove the value of the pension in the trial court (*but see* ORS 107.105(1)(e)), it must have rested on wife, who wants a share of it; but she put on no evidence whatsoever. Having done that, she now achieves for herself the surprising result of getting more than she might have got if she had put on evidence of present value.

None of this is said critically. The majority is exercising an authority which this court has in a way that is just as appropriate as the majority says it is. *De novo* review authority also encompasses sending a matter back to the trial court, and that is what I think appropriate in this instance. We have identified a *legal* error in what the trial court did. In a law action we would send the matter back for reconsideration or retrial under a correct legal rule.

In the exercise of *de novo* authority the majority decides the case essentially piecemeal, by readjusting only that which was affected by the error. I would send the matter back to the trial court with instructions, in effect, to decide the whole case again. As a matter of authority, we could do that, as we have frequently done in *de novo* cases. For the same reasons of fairness and allocation of scarce judicial resources that the majority cites for its actions, I would leave trial court work to the trial court whenever we can.

Warren, J., joins in this dissent.