In re the MARRIAGE OF Ronald W.
COPE and Phyllis A. Cope.

**Ronald W. COPE,**
Petitioner–Respondent,

v.

**Phyllis A. COPE,**
Respondent–Appellant.

Nos. 16722, 16875.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 14, 1991.

Motion for Rehearing or to Transfer
to Supreme Court Denied March 1, 1991.

Application to Transfer Denied
April 9, 1991.

Samuel J. Short, Jr., Stockton, for peti-
tioner-respondent.

Wm. G. McCaffree, Nevada, for respon-
dent-appellant.

MAUS, Presiding Judge.

Ronald W. Cope (husband) and Phyllis A.
Cope (wife) were married on June 8, 1968.
They separated on March 8, 1989. Their
marriage was dissolved on October 23,
1989. An amended decree entered on De-
cember 14, 1989 basically confirmed the
distribution of the marital property and
assignment of the payment of marital
debts set forth in the original decree. The
trial court denied maintenance. It placed
the parties' three daughters in their joint
legal custody and in the primary physical
custody of wife. The wife was awarded
$340 per month per child for child support.
The wife's appeal from that amended de-
cree is Case No. 16722. Following the en-
try of the amended decree, the wife filed a
number of post-judgment motions, includ-
ing a motion for litigation expenses on ap-
peal. The wife's appeal from the trial
court's action on that motion is Case No.
16875.

The wife states four points on appeal in
Case No. 16722. The following is an out-
line of the background to provide an under-
standing of the statement and considera-
tion of the appeals.

At the time of the dissolution, the hus-
band was 42 years old. He was Superin-
tendent of Schools for the Marshall, Mis-
souri school district. His gross salary was
$58,390 per year and his net pay was
$3,317.58 per month. The wife was 43

years old. She was employed as a special education teacher in the Mexico, Missouri School District. Her gross salary was $21,850 per year, and her net pay was approximately $1,262 per month.

From 1968 to 1974, the husband had been employed in the Missouri school system. In September of 1974, he left the teaching profession and withdrew his accumulated contributions to the Teachers Retirement Fund. He returned to teaching in 1975 after having worked in the restaurant management business. Upon his return, the husband had the option of reinstating his previously-earned 6.5 years credit for retirement purposes by the payment of $16,277 to the Teachers Retirement Fund. The husband and wife borrowed $20,000 from the wife's mother. From that amount, the husband paid $14,610 into the Teachers Retirement Fund toward reinstating his 6.5 years of service. To actually reinstate those years of service, he is required to pay an additional $1,667 by March 18, 1991. If he does not do so, the $14,610 will be repaid to him and he will not reinstate the 6.5 years of service for longevity credit.

At the time of the dissolution the husband's interest in the retirement fund consisted of the following:

| | | |
|---|---|---|
| "(a) | Contributions (includes $4,960 paid by school on 6/89—Exh Z) | $39,903 |
| (b) | Earned interest on Account (includes $3,259 credited on 6/89—Exh Z) | 14,885 |
| (c) | Reinstatement Contribution made by parties under Section 169.050 RSMo | 14,611[sic] |
| Total Retirement Account | | $69,399[sic]" |

Except for the $14,610 payback, the husband may withdraw his contributions and the interest thereon only upon leaving the system. He may never withdraw the state's contributions to his pension fund. The state's contribution to that fund can only be used for conversion to an annuity upon his retirement. The record does not show the total amount of the state's contributions.

The trial court assigned the repayment of the $15,665 debt by the following provision in the amended dissolution decree.

"35. The indebtedness of the parties to Maxine B. Albart in the amount of $15,665.00. Both husband and wife are liable on this obligation. This loan was used to purchase the residence and was later drawn out on a loan by husband which was utilized to replace funds drawn out of husband's retirement which had been withdrawn by husband. Husband is ordered to pay this indebtedness and to indemnify and hold wife harmless from any expense associated therewith. This provision is in lieu of support and it is the intention of this Court that the provisions herein made are framed in a manner that they will be recognized in the United States Bankruptcy Court as an obligation of support of the wife and not as an obligation of property division."

The amended decree also contained the following relevant provision.

"40. Both parties are denied maintenance. Both parties have sufficient income with which to support themselves."

The wife's first two points are that the trial court erred by "failing to allot a portion of husband's pension to wife, and by improperly undervaluing the pension" and "by failing to order the completion of the $1,667 payback from wife's IRA and by failing to award to each party an 'if and when' division of the pension". The two points are obviously interrelated. They are based upon the following argument.

Wife first argues that the trial court's valuation and distribution of the marital property and assignment of debts is reflected in the following summary.

"DIVISION LIST

Amended Judgment Entry December 14, 1989

| Husband: | | Wife: | |
|---|---|---|---|
| '81 Oldsmobile | $ 1,500 | Cash from home sale | $ 4,559 |

| Husband: | | Wife: | |
|---|---|---|---|
| '88 Escort | $ 8,000 | '85 Mercury | $ 6,175 |
| Debt | −8,260 | Household Goods, etc. | 5,198 |
| Larson boat | 4,000 | Children's HHG, etc. | Kids' |
| Household Goods, etc. | 2,100 | Taxvantage | 1,214 |
| Kemper blue Chip | 436 | IRA | 1,938 |
| Kemper Insurance | 422 | Savings bonds | 101 |
| El Do Dev. Corp | 0 | 3 $25 bonds | Kids' |
| Credit Union | 124 | Cash | 20 |
| IRA | 1,659 | Checking | 100 |
| Checking | 1,500 | $462 savings | Nicole's |
| MM Fund | 7,200 | $296 SAVINGS | Jessica's |
| Insurance | 1,035 | $300 savings | Tara's |
| Retirement | 25,350 | Insurance | 630 |
| Cash | 500 | Children's insurance | Kids' |
| Reinstatement payback | 14,610 | Retirement | 2,600 |
| Debts | −28,030 | Debt to mother | −2,500 |
| | | Other debts | − 983 |
| Totals: | $32,146 | | $19,052" |

Upon the basis of her summary, the wife concludes the husband was awarded 63% of the marital property and she was awarded only 37% of the marital property. She argues this grossly disproportionate distribution is exacerbated by the fact the summary includes the trial court's intolerably low valuation of the husband's interest in the Teachers Retirement Fund at $39,960. At a minimum, the wife argues that this pension right "must be valued at the present total of the husband's contributions of $69,-399." Or, if the valuation is based upon the present value of future payments of the pension, the minimum valuation should be calculated as follows.

"a) retirement at age 52 (in 10 years)
b) a payment of $1,529 per month ($18,348 per year)
c) for the husband's life expectancy of 22.5 years (depending on the discount rate selected):

| Discount Rate | Present Value |
|---|---|
| * * * | |
| 9.00% | $80,363" |

In conclusion, she argues that the grossly disproportionate distribution award of the marital property is erroneous and can be corrected only by an "if, as and when" division of the pension right. A wife asserted similar contentions in *Lynch v. Lynch*, 665 S.W.2d 20 (Mo.App.1983).

It must first be noted that the wife's summary does not accurately reflect the apportionment ordered by the trial court. It is erroneous in listing as an asset "Insurance—$1,035". That policy had been cashed and used to pay debts. Of great significance is the omission of the husband's obligation to pay the indebtedness of $15,665 to his mother-in-law. Further, the 1988 Escort automobile valued at $8,000 is the automobile in the possession of and used by the two older daughters. When those factors are taken into account, and excluding the 1988 Escort, the net apportionment is $7,446 to the husband and $19,052 to the wife.

There is no question an interest in a pension fund that results from contributions during marriage is marital property. *Kuchta v. Kuchta*, 636 S.W.2d 663 (Mo. banc 1982). The apportionment of such an interest basically presents two often complex and difficult problems. What is the present value of that interest? How should the interest be apportioned between the parties, directly or by the "offset method"?[1]

The computation of the present value of the marital interest in a retirement fund presents a multitude of variable factors and questions. The following are but examples. Is it to be based upon the cash

---

**1.** The offset or immediate offset method of distributing the pension plan is when the court awards one party all of the pension benefits, offset by other marital property awarded to the remaining spouse. See *Golleher v. Golleher*, 697 S.W.2d 547 (Mo.App.1985).

amount of the fund at the time of the dissolution? If so, to what extent and when are those contributions available? If available in the future, is the present amount to be discounted to arrive at a present value? How much of the contributions, when available, constitute marital property? Or, is the present value to be based upon the total pension payments to be paid commencing upon retirement over the life expectancy of the spouse? If so, when is a spouse deemed to retire? If so, should the computation reflect a statistical life expectancy or take into account the state of health of the recipient? How much of the resulting total is attributable to marital contributions? At what rate shall the payments be discounted to arrive at present value? Such variables and questions are increased two-fold when, as in this case, the benefits can be increased by an optional additional contribution to the fund. The types of pension rights and methods of valuation and apportionment are discussed in *Haun v. Haun,* 677 S.W.2d 927 (Mo.App.1984); *Kuchta v. Kuchta,* supra; *Campbell v. Campbell,* 668 S.W.2d 580 (Mo.App.1984); *Lynch v. Lynch,* supra.

The complex and varying nature of these problems has been recognized in the following mandate.

> "Because of the untold number of 'pension plans' which appear to have their own singular and unique requirements for meeting 'vesting' and 'maturing' provisions, *it is imperative that trial courts be authorized to apply a flexible approach* to accommodate the particular facts of each case." *Kuchta v. Kuchta,* supra at 665. (Emphasis added.)

Also see *Lynch v. Lynch,* supra.

■ The trial court determined the present value of the husband's interest in the pension fund was $39,960 and apportioned the same by the offset method. The wife contends the trial court erroneously arrived at the value by comparing it to the value of the husband's interest in the fund of $69,399 when discounted from age 52 at

9%. She points out the fund earns interest until age 52. Therefore, she says reducing the sum of $69,399 by discounting constitutes the condemned practice of "double discounting". She cites *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235 (1978); *Johnson v. Johnson,* 131 Ariz. 38, 638 P.2d 705 (banc 1981); *Duncan v. Duncan,* 724 S.W.2d 231 (Ky.App.1987); *Franzke and Franzke,* 292 Or. 110, 637 P.2d 595 (1981).

This contention fails to take into account that in arriving at the valuation of the pension rights the trial court included $14,610 representing the amount the husband had paid in as a payback. It also fails to recognize that the husband can withdraw only his contributions and the interest thereon and can do so only upon leaving the system. Nor does the wife reconcile her contention with the fact that the interest on the portion of the fund, apportioned and charged to him, earned subsequent to the dissolution, will not be marital property.

But, more fundamentally, the wife's contention does not take into account the manner in which the trial court arrived at the present value of the balance of the husband's interest in the pension fund. There was evidence that at the time of the dissolution, the husband's account, exclusive of the payback, would result in the husband receiving a pension of $651 per month at age 55. There was also evidence $651 per month for his statistical life expectancy of 20 years, when discounted at 9%, resulted in a present value of $25,350. The court added the payback of $14,610 to arrive at a total of $39,960. The trial count did not "double discount".

The wife's contention that the minimum present value of the husband's monthly pension payments is $80,363 does not establish the trial court abused its discretion. As noted, that figure is based upon a pension of $1,529 per month starting at age 52 paid for 25 years.

This contention does not take into account the fact a monthly pension of $1,529

would be partially based on the payback of $14,610. The husband is required to repay the debt of $15,665 from which that payback was derived. That $14,610 is apportioned to the husband as his part of the marital property. The wife's calculation would, in effect, charge the husband with a portion of a monthly pension purchased with his separate funds. Further, it does not appear that such calculation takes into account income taxes accruing by reason of those monthly payments. See *Stein v. Stein*, 789 S.W.2d 87 (Mo.App.1990). It is also based upon the premise the husband would retire at 52. The trial court was not compelled to accept this premise when husband testified he planned to work until at least 55. *Haun v. Haun*, supra.

In fixing the present value of and apportioning the husband's interest in the pension fund, the trial court faced a difficult task made more onerous by the limited amount of marital property and sizeable indebtedness of the parties. The trial court obviously determined that it should assign the payment of substantially all of the debts to the husband. In addition to the payment of general debts of $28,030, and the Escort debt of $8,260, the husband was ordered to pay his mother-in-law $15,665. Had the trial court not awarded the interest in the pension fund to the husband, as calculated above, his net award would have been a negative $32,514. In addition to the debts mentioned, the husband had to pay the wife $5,000 for part of her attorney's fees, his own lawyer $3,550.52 accrued at the time of the judgment, the court costs, and child support of $1,020 per month. The trial court could reasonably find that the husband would be forced to withdraw the $14,610 payback to meet his obligations. That being so, it was reasonable for the trial court to calculate the present value of the husband's interest in the pension fund as a monthly pension of $651 per month, commencing at the age of 55, the age at which he testified he expected to retire.

The trial court was also aware of the following admonition.

"The most desirable result in a dissolution proceeding would be a full and final division of marital property without any contingencies." *Lynch v. Lynch*, supra at 23.

The trial court could have adopted a different solution to the vexing problem. The fundamental rule governing appellate review has been clearly stated.

"Consequently, the trial court is vested with considerable discretion in dividing marital property and an appellate court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Dardick v. Dardick*, 670 S.W.2d 865, 869 (Mo. banc 1984).

That rule is peculiarly applicable to the valuation and distribution of a pension plan. The following is a succinct illustration.

"After attesting to a long list of variables used in determining the value, an expert for husband testified the pension plan was worth $12,146. Wife's expert, using a different formula, valued the pension plan at $102,000. The value assigned by the trial court was within the range of values testified to, and in light of the variable factors utilized in determining a value, the record supports the trial court's valuation. See *Norman v. Norman*, 604 S.W.2d 680, 684 (Mo.App. 1980) (where value is within range testified to and evidence is diffuse and imprecise in nature, trial court's valuation was not an abuse of discretion); see also *In Re Marriage of K.B.*, 648 S.W.2d 201, 206–207[14] (Mo.App.1983) (where different methods of valuation were used by each side and factors to be used were disputed, trial court's valuation was not an abuse of discretion)." *Nassif v. Nassif*, 763 S.W.2d 317, 317–318 (Mo.App. 1988).

The application of those principles establish the trial court did not abuse its discretion in valuing the pension rights and distributing the marital property. The wife's first two points are denied.

■ The wife's third point is "[t]he trial court erred in setting child support for a daughter at the University of Missouri at the same amount as the daughter at home in grade school". Under that point, she also argues that child support for a second daughter, who will enter college in September 1991, is not adequate. In general, in setting child support at $340 per month per child, the trial court followed the "Missouri Child Support Guidelines" promulgated in 735–736 S.W.2d at pp. XL to XLVIII.[2] Also, in accordance with those Guidelines, the trial court directed that the husband provide medical insurance coverage for the children. This expense was shown to be $73.96 per month.

Nonetheless, the wife relies upon the provisions of the Guidelines that an adjustment may be made to reflect educational expenses. In support of this point, she emphasizes the oldest daughter's college expenses, such as Sorority expenses of $1,500, personal and clothing expenses of $200 per month, in addition to tuition, books and dormitory fees.

The trial court also had before it a statement of the net monthly income and expenses of the husband. This reflected a net after expenses of $301.26. Those expenses did not include his obligation to pay child support. They did include payments on some of the indebtedness assigned to the husband. It did not provide for the payments on indebtedness such as the wife's attorney fees, his attorney fees, court costs, or the debt to mother-in-law. "Determination of the proper amount to be paid by husband requires a balancing between the needs of his children and his ability to pay." *Wynn v. Wynn*, 738 S.W.2d 915, 919 (Mo.App.1987). Wife does not establish the trial court did not follow this mandate. Her third point has no merit.

The wife's fourth point is that the trial court erred in not awarding her maintenance. Section 452.335, in part, provides:

"[T]he court may grant a maintenance order to either spouse, *but only* if it finds that the spouse seeking maintenance

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment...." (Emphasis added.)

■ The trial court had before it evidence that the wife's gross monthly income for nine months' work was $1,820.83 per month for twelve months. It was not required to accept, in toto, her estimate that her expenses exceeded that income. As stated, the trial court expressly found "[b]oth parties are denied maintenance. Both parties have sufficient income with which to support themselves." That finding is supported by the evidence and follows the mandate of the statute. The wife's fourth point is denied and the amended decree of December 14, 1989, is affirmed.

■ In Case No. 16875, the wife's point on appeal is "[t]he trial court's refusal of a reasonable sum for wife's litigation expenses on appeal is an abuse of discretion". That point misrepresents the record. The trial court awarded the wife judgment against the husband "in the amount of One Thousand Dollars for suit money for preparation of the transcript."

Section 452.355, in part, provides:

"[A]fter considering all relevant factors including the financial resources of both parties [the court] may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under Sections 452.-300 to 452.415 and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the

**2.** Rule 88.01, providing for a rebuttable presumption that child support calculated pursuant to such Guidelines is to be awarded, was not in

effect when the judgment in this case was entered.

commencement of the proceeding or after entry of judgment."

The trial court, upon the entry of the Amended Judgment, had awarded the wife $5,000 for attorney fees and assessed the costs of the action against the husband. Since the entry of that judgment, the husband's financial position had deteriorated.

"It is axiomatic that the trial court is granted wide discretion in determining who should pay attorney fees in this type of action." *Echele v. Echele*, 782 S.W.2d 430, 440 (Mo.App.1989).

Considering all relevant factors, including the heavy indebtedness of the husband, the trial court did not abuse its discretion in awarding the wife $1,000 for litigation expenses on appeal. The order appealed from in Case No. 16875 is affirmed.

PREWITT and CROW, JJ., concur.