

# Missouri Court of Appeals

## Southern District

### Division One

BRYAN LEE STEELE,                    )
                                     )
    Petitioner/Respondent,       )
                                     )
    vs.                          )    No. SD32326
                                     )    Filed: March 11, 2014
JUDY ANN STEELE,                     )
                                     )
    Respondent/Appellant.        )

### APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

Honorable D. Gregory Warren, Circuit Judge

**AFFIRMED**.

Judy Ann Steele ("Wife") appeals from the trial court's "Judgment and Decree of Dissolution of Marriage" ("Judgment") dissolving her marriage to Bryan Lee Steele ("Husband"). Wife submits two challenges: first that the trial court erred in awarding Wife only 10% of Husband's military retirement, and second, in deducting 3% from Wife's portion of Husband's military retirement due to Wife's marital misconduct. We affirm the Judgment of the trial court.

## Factual and Procedural Background

The parties were married on August 27, 1996, in El Paso, Texas. The parties separated April 21, 2010; however, the parties had separated numerous times before that date. There were no children born of the marriage, but Wife had two children from prior relationships.[1]

At the time of their marriage, both parties were in the military. Wife exited the military approximately two weeks before the marriage, but remained in the "inactive reserves." Wife re-entered the military on active duty in 2004.

On July 8, 2010, Husband filed a "Petition for Dissolution of Marriage" wherein he requested the "marital property and debts be equitably divided" and each party be given his or her "separate property and debts."

On February 25, 2011, Wife filed an "Amended Cross-Petition for Dissolution of Marriage" and requested the court "make a just division of the marital property and indebtedness of the parties[.]"

On February 27, 2012, a hearing was held. Husband testified that the parties had "periods of separation" during the marriage separating a "[m]inimum of a half a dozen, maybe more" before the final April 21, 2010 separation, and that the marriage was "irretrievably broken."

Husband stated that the parties owned certain items of personal property, had no real estate, and each had the capability of earning income sufficient to support themselves so neither party should receive maintenance.

Husband testified that in September 2010, he retired from the United States Army with the rank of "E9 service R Major," after serving 25 years, 14 of which while married to Wife.

---

[1] Husband legally adopted Wife's son, but he was emancipated at the time of trial. Husband's name was placed on the daughter's birth certificate at Wife's request so they all would have the same last name. A paternity test done after the divorce was filed legally determined Husband was not the natural father of daughter.

Following his retirement, Husband began receiving non-disability retirement pay. He also received income from Serco, a government contracting company he began working for in February 2011. According to his "Income and [E]xpense Statement" presented to the trial court, Husband had a total gross monthly income of $5,083: $3,401 received as retirement income from the military, along with his salary from Serco.

Wife was serving in the United States Army, with a rank of "03E Captain," and had served seven years while married to Husband. At the time of trial, Wife was stationed in Germany. Wife grossed approximately $10,000 per month. In light of her military service, Wife had a military retirement account that would not vest until she reached twenty years of service. The trial court determined Wife had "5 years to go until [her benefits] vested." It was Husband's request to keep all of his military retirement and Wife to keep all of her military retirement as the parties had each "earned" their separate retirements. Husband based that request on the fact that according to Husband's division of property and debt, Wife would end up owing him cash money so he was requesting the trial court offset that by awarding him his entire retirement pension and allowing Wife to keep her entire retirement pension.

Husband testified that at the time of separation, the parties owned real estate—the marital home—in Waynesville, Missouri, which was purchased for $275,000. After Wife became stationed in Germany in April 2010, and until the house sold in May 2011, Husband testified he paid $2,150 per month for the mortgage payment and all utilities. At that time, his sole income was the $3,401 he received monthly from his military retirement as he did not start working for Serco until February 2011. Although Wife was grossing $10,000 per month, she did not contribute to the mortgage payment and Husband was paying 66% of the marital debt. Husband also paid approximately $4,000 towards Wife's student loans during this time. The only money

3

Wife sent Husband to help with the marital bills was a total sum of $900 for the months of October, November, and December 2010, but only because she was ordered to "by her chain of command."

Wife would not agree to sell the house unless Husband agreed to be solely responsible for any deficiency on the sale and sign an affidavit agreeing he would pay the entire deficiency if there was one. Husband did sell the home, with a deficiency of $10,399, which Husband paid in its entirety.[2] Husband testified that during the marriage, the parties operated their finances separately by having separate accounts and all the house payments were made from his account with no contribution from Wife.

Husband testified the couple planned to live in Germany upon Wife's deployment in April 2010, and he was to join Wife there full time after he retired in September 2010. Upon arrival in Germany, Husband and Wife secured government quarters and picked up vehicles and household goods,[3] which had been shipped from the United States. Once this was accomplished, Wife informed Husband he could not live with her and would have to find his own apartment as she did not love him anymore. Husband had to return to the United States to "complete separation procedures with the military." However, Husband made arrangements to return to Germany in June 2010 on a sixty-day leave in hopes of reconciling with Wife, but prior to his departure, Wife told him he could not stay with her during that two months. Financially unable to live in a motel for two months, Husband cancelled the trip and made no further attempt to return to Germany.

---

[2] Husband did receive $2,857.64 from the sale of the house, which represented reimbursement for homeowner's insurance and the escrow account. Wife willingly signed over those proceeds to Husband.

[3] At that time, 80% of their possessions were placed in storage in the United States under Wife's military orders (with her having the only access), 15% was shipped to Germany, and 5% was stored in the United States under Husband's military orders.

Upon his return to the United States, Husband continued to live in the marital home until it sold. When Husband moved, the only property he had was an air mattress to sleep on and clothing. He had to completely refurnish the residence he moved into after the sale because Wife refused to give him access to the marital property in her military storage unit in the United States. Husband asked Wife to ship some of his personal items back from Germany, but she refused to do so unless he paid for the shipping cost.

Husband testified he was asking the trial court to award him his personal property (some in storage with Wife in Germany) and that Wife could have any other marital property in storage, as well as any other property she had with her in Germany.

On cross-examination, Husband denied that Wife ended her military career in order to support his when the parties were married. He testified his military career "was doing successfully very well at that time." Due to continuous marital strife, Husband testified there were times Wife "was unsupportive"; that Wife "jeopardized me as much as she supported it."

Wife testified she ended her military career sixteen days before marrying Husband. She became a "family readiness group leader" at several of the army posts where Husband was stationed as support for Husband. She was "volunteer of the year" in 2003. Wife believed Husband would not have made the rank of "E9" without her support.

On cross-examination, Wife admitted that even though she grossed $10,000 per month, she did not help Husband with the mortgage payments or the deficiency on the sale of the house. She testified she paid $3,000 a month for a 3-bedroom home in Germany, which was a private residence or "off-post quarters." When she first arrived in Germany, she was living in government quarters but then chose to move to her current home. She petitioned to live off post because she had three large dogs and it was difficult with the dogs living on the third floor of the

5

apartment building, and she only had one bathroom. She admitted most of the parties' personal property was in storage in Missouri under her military orders, she did not let Husband remove any of the items in storage to furnish his new home, and that everything was packed up when she left for Germany because Husband was to move with her to Germany. She admitted that the parties' marriage was "somewhat volatile" over the "course of the entire marriage."

Neither party presented expert testimony regarding the value of their respective military retirement plans, nor did the parties request the trial court value the military retirement plans.

At the close of the evidence, the trial court granted the dissolution of the parties. The trial court found that both parties could support themselves adequately and no maintenance was awarded. However, the trial court took under advisement the division of property and advised the parties that he would "send a decision to your attorneys as soon as possible."

On June 5, 2012, the trial court sent the parties a letter with its decision.[4] With respect to the military retirement benefits of the parties, the trial court determined the benefits "will be of comparable value when vested" and noted Wife had "5 years of non-marital benefits and 5 years to go until vested." The trial court then concluded in its letter:

> Therefore, Marital portion from 1996 to Separation, 2010, is 14 years/25 for [Husband's] retirement and 6/20 for [Wife]. Using the standard formula, .56/2=28% for [Wife] and 30/2=15% for [Husband]. Court is offsetting the two and finding 13% is the presumed retirement to be awarded to [Wife]. However, because of no offset in [Personal Property award] and [Wife's] misconduct . . . , Court reduces and awards [Wife] 10% of [Husband's] military retirement, beginning March 1, 2012. [Wife] keeps all her retirement. . . .

(We have shown the text from the trial court's letter as written.)

Two months after sending the letter, the trial court entered its Judgment on August 6, 2012. The Judgment provided that the parties' marriage was a "volatile, argument filled

---

[4] This letter was not a Judgment and specifically noted the trial court could amend or alter any decision until the final Judgment was signed. In conclusion, the trial court requested that counsel prepare and approve the final Judgment for the trial court's signature.

6

marriage with many separations totaling at least 4 years of the 14 year marriage and [found] equal misconduct as to these factors." However, the trial court found

> additional financial misconduct by [Wife], especially the last two years, in denying [Husband] furniture to live with . . . , not assisting in marital debts for which she was equally liable and in demanding [Husband] be solely responsible for the loss on the sale of real estate. [Wife] also committed misconduct in letting [Husband] believe he would be living with her in Germany, and then refusing when she moved to her apartment.

The trial court also made a division of non-marital and marital property. Both Husband and Wife were awarded "Military Retirement" as part of their marital property award. The division of property and debts resulted in "*Credit/Debit Needed To Equalize Equities*" of $32,372.49 because Wife's "Net Marital Equity" was $104,497 (after reduction to her total marital property of $30,500 for marital debt awarded to Wife).

Despite finding a "*Credit/Debit Needed to Equalize Equities*," the trial court did not award an offset to the division of property because of "other findings and orders set out in th[e] Judgment." The trial court went on to award Wife "her separate military retirement" and "10% of [Husband]'s non-disability retirement." Consistent with the June 5 letter, the trial court's Judgment "offset from the standard formula given that no offset was provided for in the division of personal property and [Wife]'s misconduct as set out in paragraph 9 [of the Judgment]." This appeal followed.

Wife claims two points of error. First, Wife claims the trial court erred in "offsetting" the parties' military retirement benefits resulting in the trial court's award to Wife of 10% of Husband's military retirement benefits because the award was "inequitable, against the weight of the evidence and based upon an erroneous application of the law[.]" Second, Wife claims the

7

trial court erred in deducting 3% of the 13% awarded to Wife of Husband's total military retirement based on Wife's marital misconduct.[5]

The issues for our determination are:

1.      Whether the trial court's award concerning the military retirement benefits was supported by substantial evidence, was not against the weight of the evidence, and was not based on an erroneous declaration or application of the law.

2.      Whether the trial court abused its discretion in reducing Wife's award of marital property based on her financial marital misconduct.

### *Point I:  Offset of Military Retirement Benefits*

### **Standard of Review**

In a dissolution case, this Court will affirm the trial court's decision unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law.  ***Jennings v. Jennings***, 327 S.W.3d 21, 23 (Mo.App. E.D. 2010).  "In assessing the sufficiency of the evidence, we examine the evidence and the reasonable inferences derived therefrom in the light most favorable to the judgment."  ***In re Marriage of Cornella***, 335 S.W.3d 545, 548 (Mo.App. S.D. 2011).  It is not our function to retry this case.  ***Id.***

With respect to a trial court's ruling regarding property,

[a] trial court is given broad discretion in dividing property in a dissolution action, and we will interfere with its decision only if the division is so unduly weighted in favor of one party that it amounts to an abuse of discretion.  The trial court abuses its discretion only when its ruling is 'clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration.'

***Souci v. Souci***, 284 S.W.3d 749, 754 (Mo.App. S.D. 2009) (quoting ***In re Marriage of Holden***, 81 S.W.3d 217, 225 (Mo.App. S.D. 2002)) (internal citation omitted).  "The division of property is presumed to be correct, and the party challenging the division bears the burden of overcoming

---

[5] The Judgment did not reflect the specific calculation the trial court used to determine the percentage of retirement awarded to Wife.  Rather, this calculation is contained in the trial court's June 15, 2012 letter to the parties, and is a basis for Wife's claimed error.

the presumption." ***Souci***, 284 S.W.3d at 755 (internal quotation and citation omitted). "It is not per se an abuse of discretion if the trial court awards one party a considerably higher percentage of the marital property than it awarded the other party." ***Workman v. Workman***, 293 S.W.3d 89, 96 (Mo.App. E.D. 2009).

### Analysis

On appeal, Wife contends the trial court erred in "offsetting" the parties' military retirement benefits in reaching an award of 10% of Husband's military retirement benefits to Wife. Wife claims this was error because Wife's military retirement benefits have not yet vested and Wife may never receive benefits from her retirement account, but Husband's benefits have vested and he is receiving "significant income from his retirement benefits." Wife further claims error in the trial court's failure to value the retirement benefits and dividing the retirements based on percentages "without considering the status of the benefits of the parties."

Section 452.330.1[6] provides "[i]n a proceeding for dissolution of the marriage . . . the court . . . shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors[.]" A trial court has "broad discretion" in dividing property in a dissolution proceeding, and the "'division of marital property need not be equal, but must only be fair and equitable given the circumstances of the case.'" ***Souci***, 284 S.W.3d at 755 (quoting ***Nelson v. Nelson***, 25 S.W.3d 511, 517 (Mo.App. W.D. 2000)). When dividing the marital property, per section 452.330.1, the trial court must consider all the relevant factors including: (1) "[t]he economic circumstances of each spouse at the time the division of property is to become effective . . . "; (2) how each spouse contributed "to the acquisition of the marital property, including the contribution of a spouse as homemaker"; (3) "[t]he value of the nonmarital property set apart to each spouse"; and (4) the conduct of each spouse during the

---

[6] All references to statutes are to RSMo 2000, unless otherwise indicated.

marriage. § 452.330.1. "Those factors listed in section 452.330.1 are not exhaustive, and the trial court has 'great flexibility and far-reaching power in dividing the marital property.'" **Long v. Long**, 135 S.W.3d 538, 542 (Mo.App. S.D. 2004) (quoting **Farley v. Farley**, 51 S.W.3d 159, 165 (Mo.App. S.D. 2001)).

Non-disability retirement plans earned during marriage are marital property subject to division. **In re Marriage of Irions**, 988 S.W.2d 62, 66 (Mo.App. S.D. 1999). The fact a pension has not yet vested or matured does not deprive it of its character as marital property. **In re Marriage of Ward**, 955 S.W.2d 17, 20 (Mo.App. S.D. 1997). Here, the trial court set out the division of non-marital property, marital property, and debts in Exhibit A attached to the Judgment. Both Husband and Wife were awarded "Military Retirement" as part of their marital property award. However, the specific military retirement is not designated and under "value" for the military retirements, the trial court placed an "X" for both awards. A summary of the total value of property and debt awarded to the parties is as follows:

RECAPITULATION OF PROPERTY AND DEBT:

| | |
|---|---|
| [Husband]'s Total Marital Property | $ 39,752.01 |
| [Husband]'s Total Marital Debt | $       [0.00] |
| [Husband]'s Net Marital Equity | $ 39,752.01 |
| | |
| *Credit/Debit Needed to Equalize Equities* | *+ 32,372.49* |
| [Husband]'s Net Marital Assets (assuming equalization) | $ 72,124.50 |
| | |
| [Wife]'s Total Marital Property | $134,997.00 |
| [Wife]'s Total Marital Debt | $ 30,500.00 |
| [Wife]'s Net Marital Equity | $104,497.00 |
| | |
| *Credit/Debit Needed to Equalize Equities* | *$-32,372.49* |
| [Wife]'s Net Marital Assets (assuming equalization) | $ 72,124.51 |

Despite finding a "*Credit/Debit Needed to Equalize Equities*," the trial court did not award an offset as to the division of property set out in Exhibit A because of "other findings and

orders set out in th[e] Judgment." Rather, the trial court applied the offset when detailing the award to Wife of Husband's non-disability retirement, which is marital property.[7] The trial court awarded Wife "her separate military retirement" and "10% of [Husband's] non-disability retirement[,]" and specifically noted the military retirement benefits award was "offset from the standard formula given that no offset was provided for in the division of personal property and [Wife]'s misconduct as set out in paragraph 9 [of the Judgment]."[8]

The "standard formula" mentioned by the trial court in its Judgment is also mentioned by the trial court in its June 5, 2012 letter to the attorneys setting forth its decision in the case.[9] In the letter, the trial court wrote:

> Each party has military retirement benefits which will be of comparable value when vested. However, [Wife] has 5 years of non-marital benefits and 5 years to go until vested. Therefore, Marital portion from 1996 to Separation, 2010, is 14 years/25 for [Husband]'s retirement and 6/20 for [Wife]. Using the standard formula, .56/2=28% for [Wife] and 30/2=15% for [Husband]. Court is offsetting the two and finding 13% is the presumed retirement to be awarded to [Wife]. However, because of no offset in [Personal Property award] and [Wife's] misconduct . . . , Court reduces and awards [Wife] 10% of [Husband's] military retirement, beginning March 1, 2012. [Wife] keeps all her retirement. . . .

(We have also shown this text from the trial court's letter as written.)

Based on the record before this Court, the trial court used the "standard formula" for determining the division of military retirement benefits as found in *Ward*, 955 S.W.2d. at 17 (citing *Lynch v. Lynch*, 665 S.W.2d 20 (Mo.App. E.D. 1983)). In *Ward*, the formula was

---

[7] "The offset or immediate offset method of distributing the pension plan is when the court awards one party all of the pension benefits, offset by other marital property awarded to the remaining spouse." *In re Marriage of Cope*, 805 S.W.2d 303, 305 n.1 (Mo.App. S.D. 1991).

[8] The trial court found financial misconduct by Wife in denying Husband furniture to live with, not assisting in payment of marital debts, in demanding Husband be solely responsible for the loss on the sale of real estate, and in letting Husband believe he would be living with her in Germany and then refusing when she moved to her apartment. Wife also claims error in the reduction of her benefits based on financial misconduct. This claimed error is addressed in Point II below.

[9] In this letter, the trial court "reserve[d] the right to amend or alter any part hereof until the final Judgment is signed." The Judgment was signed by the trial court on August 6, 2012.

11

applied to determine what portion of the retirement constitutes marital property subject to division and ensure a spouse would not share in the post-dissolution accumulation of benefits. *Id.* at 20-22. Here, the trial court did the same and determined under the "standard formula" that Wife was entitled to 28% and Husband 15% from their respective benefits.

The trial court in this case *then* departed from the percentages from the formula for two reasons: (1) the trial court found the military retirement benefits would be of comparable value when vested, so offset the two finding the presumed award to Wife was 13% of Husband's, and her separate military retirement in full; (2) the trial court further reduced Wife's award to 10% because (a) a credit of $32,372.49 to Husband was needed to equalize equities following the division of property in Exhibit A, which was not yet done in the division of property; and (b) Wife's financial misconduct identified in the Judgment.

We do not find the trial court's departure from the formula to be error. As we noted in *Ward*, this formula is not the exclusive method of determining a property division award. Rather, it is simply one method by which a trial court can determine the marital portion of retirement plans which are non-vested or non-matured at the time of dissolution. *Id.* at 21. Wife fails to point this Court to any authority requiring a trial court to divide military retirement benefits according to a particular formula or standard. Our research has led us to quite the opposite conclusion in that we find "it is not mandatory that pension benefits be divided between spouses . . . where other assets are available."[10] *Kutcha v. Kutcha*, 636 S.W.2d 663, 666 (Mo. banc 1982). Oftentimes speculative questions are presented to a trial court in a divorce proceeding, especially in the division of marital property, including retirement benefits. As the Supreme Court of Missouri noted, these questions "do not lend themselves to rigid and fixed

---

[10] It is also clear an "offset" or "immediate offset" method of distributing pension plans is permissible. *See Cope*, 805 S.W.2d at 305 n.1.

12

rules." *Id.* at 665. For this reason, "it is imperative that trial courts be authorized to apply a flexible approach to accommodate the particular facts of each case[]" because the desired outcome of any dissolution proceeding is "a full and final division of marital property without contingencies." *Id.* at 665-66.

Wife claims error because "[n]owhere in the [J]udgment did the court consider the relative values of Wife's military retirement account and Husband's military retirement account." However, the trial court specifically noted the parties' military retirement benefits "will be of comparable value when vested" in its letter to the parties. "When no express finding of fact is made on an issue, we consider the issue to have been resolved in accordance with the result." *Holden*, 81 S.W.3d at 226-27. In light of the trial court's earlier finding that the benefits would be of comparable value, we consider the Judgment to have been resolved in accordance with that finding.

Wife further argues there "was no evidence to support a finding that Wife's retirement account has any current value[,] . . . has . . . vested or is being paid to her[,] . . . [so] there is no basis upon which to find that Wife's retirement should be valued in the same manner as Husband's retirement[.]" We first note Wife does not cite us to any part of the record showing she requested the trial court make a finding on the value of either retirement plan, and we have found no such request. "Unless a request is made, the trial court is not required to make specific findings as to the value of items of marital property." *In re Marriage of Rippee*, 862 S.W.2d 493, 494 (Mo.App. S.D. 1993).

Furthermore, we note Wife presented exhibits to the trial court, specifically Exhibits C and D, containing calculations of Husband's retirement pay and Wife's estimated retirement pay. Wife presented to the trial court her estimated retirement pay "[b]ased on Amount an O-3 E Over

20 Gets in 2013." According to these exhibits, Wife also proposed the same percentages to each spouse that the trial court came up with using the "standard formula"; i.e., 28% to Wife and 15% to Husband. In light of these exhibits, along with the lack of a request that the trial court make a finding on the value of the retirement plans, we disagree with Wife's claim there was no basis to value Wife's retirement. Rather, the trial court properly considered the non-disability retirement benefits of both parties as marital property, and properly considered the non-vesting nature of Wife's retirement benefits at the time of trial.

Wife does not dispute both parties' military benefits may be considered marital property. She claims error, however, in the fact the trial court "offset" the plans against each other.[11] Wife further argues because her retirement benefits have not vested, the value of her benefits remain "unknown." Wife further cites the formula found in *Ward* in support of this argument. While *Ward* is instructive, it is also distinguishable in that the issue in *Ward* was the designation of *entire* benefits as marital property. Here, although the trial court determined the retirement plans were of comparable value, the trial court *did* apply the *Ward* formula to take into consideration the portions of the retirement plans earned before the marriage and after the dissolution, which would constitute non-marital property, thereby following the outcome in *Ward*.

Wife's real complaint is the fact the trial court, under the broad discretion permitted to a trial court, reduced the percentage of Husband's plan awarded to her. Her complaint is actually with the trial court's property division in dividing the retirement plans so as to equalize the marital property awarded to the parties. This division resulted in a division that protected the rights and interests of *both* parties. Moreover, Wife's claims of error in "offsetting" the retirement because Husband's retirement is already vested while Wife's retirement will not be

---

[11] Wife acknowledges the percentage of Husband's retirement awarded to her "was purportedly 'offset' by Wife receiving all of her retirement benefits."

vested for years, ignores the fact the trial court did not award Husband any percentage of Wife's retirement. The trial court determined Husband was entitled to 15% of Wife's retirement plan under the formula, but instead awarded Wife her separate military retirement. We observe, the trial court was creating a division that would be a full and final division of marital property without any contingencies, which is the favored outcome in Missouri dissolution proceedings.[12] *Kutcha*, 636 S.W.2d at 665-66.

Finally, Wife's argument ignores the fact that a distribution of marital property in Missouri constitutes a final order, which is not subject to modification. *See* § 452.330.5. "Thus, once it has been divided as part of a final decree, a pension may not be redivided after circumstances have changed." **In re Marriage of Strassner**, 895 S.W.2d 614, 618 (Mo.App. E.D. 1995).

A trial court has broad discretion to devise a division of marital property, including non-disability retirement plans that protect the rights and interests of both parties. **Kutcha**, 636 S.W.2d at 666. Missouri courts have taken many different approaches in determining a division

---

[12] Husband argues in his brief that:

> The Trial Judge in this case, Judge Gregory Warren, has heard thousands of military divorces and is certainly aware that military personnel can retire from the military before their military pension is vested and rollover their time and service to a civil service pension. See *The Military Divorce Handbook*, Sullivan, at 626. This would have the practical effect in our case of cutting out the Husband's right to receive any military pension benefits from Wife because the military pension would not vest. Wife would now have a civil service pension which she would be entitled to 100% when it vested. It is a reasonable inference in the instant case to believe that the Trial Judge wanted to eliminate the risk of forfeiture to Husband and the possible windfall to Wife in a situation where Wife retires from the military before her pension vests, rolls over her time in the military to a civil service pension (thereby preventing Husband from receiving his share of Wife's military pension) and then keeps 100% of the civil service pension and continues to receive her percentage of Husband's military pension. This is especially true given the Court's finding of marital misconduct against Wife.

15

of non-disability retirement benefits.  We find the trial court's approach was not an abuse of discretion.[13]

After viewing the evidence in the light most favorable to the Judgment, we find the trial court's award concerning the military retirement was supported by substantial evidence, was not against the weight of the evidence, and was not based on any erroneous declaration or application of the law.  *Jennings*, 327 S.W.3d at 23.  The trial court had substantial discretion in dividing marital property, and we will not interfere unless the division is so heavily weighted in favor of one party so as to amount to an abuse of discretion.  *Booth v. Greene*, 75 S.W.3d 864, 868 (Mo.App. W.D. 2002).  With respect to her allegations of error in Point I, we find Wife failed to meet *her* burden of overcoming the presumption that the trial court's division of property is correct.  *See Souci*, 284 S.W.3d at 755.  Point I is denied.

### Point II - Marital Financial Misconduct

### Standard of Review

We will not reverse a trial court's division of property "unless the division of property is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion."  *Jennings*, 327 S.W.3d at 23.

> Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the trial court's action, it cannot be said the court abused its discretion.

*In re Marriage of Eskew*, 31 S.W.3d 543, 550 (Mo.App. S.D. 2000).

---

[13] Wife's argument is essentially that the division is inequitable because she is receiving less from Husband's retirement plan than what she feels she is entitled to.  We disagree.

**Analysis**

In her second point, Wife claims the trial court erred in reducing Wife's award of Husband's military retirement benefits by 3% due to her financial misconduct. Wife claims this reduction improperly punished Wife for incidents that occurred after the separation of the parties and resulted in minimal financial impact or burden on Husband.

Under section 452.330, a trial court is given "great flexibility and discretion in its division of marital property." *Ballard v. Ballard*, 77 S.W.3d 112, 116 (Mo.App. W.D. 2002). One of the five factors a trial court must consider in dividing marital property is the "conduct of the parties during the marriage[.]" § 452.330.1(4); *see Dodson v. Dodson*, 904 S.W.2d 3, 9 (Mo.App. W.D. 1995). When resolving conflicting testimony about the conduct of the parties, the trial court may reject or accept any of the testimony brought before the court, and we give deference to the trial court on issues of witness credibility. *Messer v. Messer*, 41 S.W.3d 640, 643 (Mo.App. S.D. 2001).

"Marital misconduct which occurs after the parties have separated affects the division of marital property where the misconduct imposed additional burdens or hardships on the other party." *Anderson v. Anderson*, 656 S.W.2d 826, 828 (Mo.App. E.D. 1983). In this case, there was evidence presented to the trial court of Wife's financial misconduct. Wife failed to assist Husband in paying the mortgage on their marital home from April 2010, until the house was sold in May 2011. During this time, Husband paid $2,150 per month for the mortgage payment and all utilities, while Wife did not contribute to the mortgage payment or send any money to help with the marital bills despite grossing substantially more monthly income than Husband.[14]

---

[14] Wife did send Husband a total sum of $900 for the months of October, November, and December 2010, but only after she was ordered to "by her chain of command."

17

Despite the large difference in their monthly incomes,[15] Husband was paying 66% of the marital debt, along with paying approximately $4,000 towards Wife's student loans. Wife also required Husband to bear the entire loss from the sale of the marital home and withheld household furniture from Husband requiring him to refurnish his new home.

After a review of the record, we cannot say the trial court erred in finding marital misconduct by the Wife, and reducing Wife's award of marital property in light of her financial marital misconduct. "[I]f reasonable persons can differ about . . . the trial court's action, it cannot be said the court abused its discretion." *Eskew*, 31 S.W.3d at 550. Applying this standard, we find no abuse of discretion by the trial court. Wife's Point II is denied.

The Judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., C.J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. - Concurs

DANIEL E. SCOTT, J. - Concurs

---

[15] Wife grossed approximately $10,000 per month; Husband grossed $5,083; according to their Income and Expense Statements presented to the trial court. However, Husband did not start working at Serco until February 2011, so for the majority of the time, he was the only person paying the mortgage and his only monthly income was from his monthly military retirement benefits of $3,401.