

# Missouri Court of Appeals
## Southern District

In Division

CHRISTOPHER J. GARDNER, )
)
    Appellant, )  No. SD38026
)
v. )  **Filed: May 6, 2024**
)
CATHY J. GARDNER, )
)
    Respondent. )

APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Gayle L. Crane, Judge

## **AFFIRMED**

Christopher J. Gardner ("Husband") appeals from an amended judgment dissolving his marriage to Cathy Jo Gardner ("Wife"). In relevant part, the amended judgment: (1) ordered Husband to pay child support in the amount of $2,000 per month "until further order of court or the children are no longer eligible for support under Missouri law"; and (2) found that Husband's business, Gardner Express Care, LLC ("Express Care") had a value of $1,307,485 and ordered Husband to pay Wife $574,006.74 "as and for property equalization." Husband filed a "Motion to Reopen, Correct, Amend or Set-Aside the Amended Judgment or, in the Alternative, Motion for

New Trial" (the "post-trial motion").[1]  Husband's post-trial motion requested:  (1) a new trial and/or to reopen the evidence based on newly discovered evidence that his oldest child had married, and was now emancipated; (2) to reopen the evidence to allow Husband to introduce additional evidence of two SBA loans in the amounts of $92,748.88 ("the 2017 Loan") and $340,600 ("the 2020 Loan"), respectively; (3) and to correct the division of marital assets and debts because the trial court overvalued Express Care.  Husband's motion was denied by operation of law and Husband filed this appeal, raising seven points.  In points 1 through 4, Husband claims the trial court abused its discretion in denying his post-trial motion seeking a new trial to present evidence of his oldest child's emancipation (point 1), and to reopen the evidence to present additional evidence of his oldest child's emancipation (point 2), the 2017 Loan (point 3) and the 2020 Loan (point 4).  In points 5 and 6, Husband claims the trial court erred by not including the 2017 Loan as a valid marital debt because there was no substantial evidence to support the exclusion of that debt (point 5) and because that exclusion was against the weight of the evidence (point 6).  In his final point, point 7, Husband claims the trial court erred in valuing Express Care at $1,307,485 because there was no substantial evidence to support that valuation.  Finding no merit in any of Husband's points, we affirm.

### Factual and Procedural Background

Husband and Wife were married in 1997, and, at the time of trial in September 2022, had two unemancipated daughters.  Husband is a nurse practitioner and began operating a clinic under the entity, Christopher J. Gardner, NP, LLC ("Gardner LLC"), in

---

[1] Many of the documents referred to in this matter were titled and written in all capital letters.  When quoting such, this Opinion reverts to conventional capitalization for ease of readability.

2008.  Wife was primarily a homemaker until December of 2017, when she began working for Husband at his clinic.  In 2018, Husband formed a second LLC, Express Care, for the purpose of opening a walk-in urgent care clinic and weight loss service.  The couple began having marital problems, and in May 2020, Husband moved out of the marital home and then in with his girlfriend.  A few months later, Husband filed a petition for dissolution and Wife filed a counter-petition for dissolution.  Wife also filed a motion to join Express Care as a necessary party, which was sustained.  In September 2022, a trial was held and the following evidence was adduced.

*The SBA Loans*

Husband testified he had taken out two SBA loans related to his two LLCs.  According to Husband, the first loan was a construction loan taken out in the name of Gardner LLC in 2017 and the second was a loan taken out in the name of Express Care LLC in 2020 for the purpose of covering expenses from business losses during the COVID pandemic.  Husband offered two exhibits related to the loans, Exhibits 10 and 11, which were printouts purportedly from the SBA website.  Exhibit 10 showed a principal balance of $95,231.20 on a loan that originated in June 2017 with the "co-obligor" listed as Gardner LLC and an accrued interest of $0.00.  Neither Husband nor Wife were listed as an obligor on the document.  Exhibit 11 showed a principal balance of $340,600 on a loan that originated in June 2020 with the "co-obligor" listed as Express Care.  Again, no other obligor was listed and the accrued interest was listed as $0.00.

Husband did not offer copies of any promissory notes evidencing the indebtedness of his companies, the terms of repayment, or who was obligated to repay the debts.  Husband testified his business received a PPP loan during COVID, but that

3

debt had been forgiven.[2]  Husband testified the current balance on the 2017 Loan was $93,970.  As to the 2020 Loan, Husband claimed the principal amount was $340,600.  Husband was unsure if the 2020 Loan was a PPP type of loan or not, but testified he would be expected to resume payments in approximately "15 months or so[,]" and he believed it had a 3.75% interest rate over 20 years.

In an attempt to clarify Husband's testimony regarding the loans, the trial court and Husband had the following exchange:

> [Trial court]  So I have two - I have Exhibits 10 and 11 that one is $340,000.00 loan and another is $95,231.00.  But on last year's tax return - let me find it – I only have PPP loan of $134,000.00 and the EID loan of $5,000.00.  So how do I get over $435,000.00 of loans today when the tax return shows a PPP loan, well actually at the end of tax year it said $130,345.00, which if I understand is forgiven and then an EID loan of $5,000.00?  So according to the tax return there should only be $5,000.00 in loans but yet you've given me these loan things, which I'm not for sure where they came from, of $435,000.00?
>
> [Husband]     So those come from the SBA.
>
> [Trial court]  So are you telling me as of last year you had no SBA loans?
>
> [Husband]     Last year.  No, there were two PPP loans that were forgiven.  There was one EID-L loan and then there was a second distribution that they just added on top of the original loan.  That's why it is $360,000.00 instead of whatever the original amount was.
>
> [Trial court]  So according to your tax return, at the end of the year you had zero of EID loan and you had $130,345.00 in PPP loan.  The testimony has been the PPP loan was forgiven so that would be zero of the last year.  But Exhibits 10 and 11 shows $435,000.00 worth of loans, which I guess is a SBA loan?

---

[2] The Paycheck Protection Program ("PPP") provided loans to help businesses keep their workforce employed during the COVID pandemic.  Many PPP loans were eligible for loan forgiveness.  *See* https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program (last visited 5-1-24).  The Economic Injury Disaster Advance Program ("EID") provided loans to help small businesses recover from the economic impacts of the COVID pandemic.  *See* https://www.sba.gov/funding-programs/loans/covid-19-relief-options/eidl (last visited 5-1-24).

[Husband]    There's two separate loans there.  One is the EID, the $93,000.00, $95,000.00 that's the loan from when I started the business, the construction loan.

[Trial court]  Okay.  But there's nothing on your tax returns that you have a loan.

[Husband]    I don't know.  I don't know how to answer that.  I can call my accountant about that, I guess, I don't know.

[Trial court]  Well what do you think the $349,000.00 loan is for?  And did that occurred [sic] just this year?

[Husband]    The $349,000.00?

[Trial court]  Yes.  That's Exhibit 11.  All it says is:  Dispersed, current, originated 6-16 of 2020, again, it is not on your tax return and current principle balance is $340,600.00.

[Husband]    So that's the original EID loan that they added $200,000.00 and some to just a few months ago.  And I haven't had to make any payments on that, maybe that's why it is not on the tax return, I don't know.

[Trial court]  And why did - was it an open loan that you could take disbursements when you wanted?

[Husband]     applied once and they gave me - they did some calculation and gave me a number and then I got another email a year later and they said the second distribution is coming and you're eligible so fill this out and then they do another calculation and add to it.

[Trial court]  And was this during the COVID years?

[Husband]    Yes.

[Trial court]  So you don't have to pay this back now?

[Husband]    Not right now, I will.

[Trial court]  And what do you have that shows that you're ever going to have to pay it back because, again, it is not on your tax returns?

[Husband]    I guess the loan documentation that shows that it is deferred for, I believe, 18 months and then it begins - the payments begin but interest accrues during that time.

5

[Trial court]   So the $95,000.00 says your payoff date is 8-1 of '22.

[Husband]     That is if I pay it off, that's the payoff.

[Trial court]   Okay.  It says no accrued interest, no outstanding interest, total interest is zero, undisbursed is zero, there's no daily interest accrual, which tells me there's not a loan.

[Husband]     The SBA website isn't very good at the printouts.

[Trial court]   Are both of these supposed to be SBA loans?

[Husband]     It is through the SBA, yes that's where I got them.

[Trial court]   And are they all part of the COVID money?

[Husband]     No, the first one is not, the $90,000.00 something was my construction loan.

[Trial court]   So I'm at a place where it is hard for me to show 10 and 11 when I have a tax return that doesn't show them.  I understand that $200,000.00 was taken out this year but I don't understand why there's no - nothing on your tax returns and you told me the other Exhibits weren't accurate, but they don't have them either.  So all I have is a couple of pieces of paper, Exhibits 11 and 2, [sic] saying there's loan numbers, tax ID numbers and the money and it doesn't really do anything for me to tell me whether or not because the controlling documents to me are income tax returns and profit and loss.  So I don't know if we have any other documentation or not.

*Express Care's Value*

Husband valued Express Care at $500,000 based on the company's assets minus its debts.  Husband testified the 2020 Loan consisted of two distributions, and the second distribution, which totaled $225,000, was placed into Express Care's checking account.  As to Express Care's debt, Husband testified the business had an indebtedness of $434,570.  As to Express Care's assets, Husband testified the business had three vehicles and "$734,000.00, give or take" but believed approximately $300,000 should

6

be subtracted from that amount due to the 2017 Loan and the 2020 Loan.[3]  Neither loan was reflected on the income tax returns of Gardner LLC or Express Care.

Wife did not testify as to the value of Express Care, but admitted into evidence a 2020 tax return for Express Care which listed the business's total assets at $577,684. The tax return reported the total liability and members' equity for Express Care at the end of 2020 equaled the total assets of $577,684.

*The Judgments and Post-trial Motions*

The trial concluded after a one-day hearing in September 2022.  The trial court entered its first Judgment of Dissolution in October of 2022.  Husband timely filed his first "Motion to Amend or Set-Aside Judgment or, in the Alternative, Motion for New Trial" in November 2022.  In this motion, Husband argued the trial court erred in omitting the 2017 Loan and 2020 Loan from its allocation of debts and requested the evidence be reopened.  Husband attached a notarized letter from the president of Simmons Bank which referenced Gardner LLC and a loan that originated in 2017.  The letter stated that no funds from the loan were eligible for forgiveness.

The trial court issued an Amended Judgment on December 14, 2022.  The amended judgment granted Husband and Wife joint legal custody and joint physical custody of the two minor children.  Husband's presumed amount of child support for the two children, calculated in accordance with rule 88.01 and Form 14 guidelines, was $2,426 per month.[4]  But the trial court ordered Husband to pay Wife the sum of $2,000

---

[3] The vehicles are:  (1) 2018 Ford Truck – No debt; valued at $30,000; (2) 2019 Infinity SUV –Debt of $31,000; valued at $65,000; (3) 2020 Jeep Grand Cherokee– Debt of $54,423.  The 2019 Infinity SUV has been in Wife's possession since it was purchased in 2020.  Husband's business has paid all debts on said vehicle.
[4] All rule references are to Missouri Court Rules (2023).

7

per month for child support for the two children "until further order of court or the children are no longer eligible for support under Missouri law."[5]

The trial court made the following findings relevant to the division of assets and debts:

> [Husband] introduced two exhibits he claimed was marital debt and was debt of [Express Care]. [Husband] did not produce any notes on said debts. Said debts were not on the [Express Care] tax return. [Wife] introduced evidence that there was a debt to Simmons Bank in the amount of $92,748.88 (Exhibit LL). This debt was acknowledged by the parties and it was on their DR Form 1. However, the document (Exhibit LL) contained the business entity of [Gardner LLC]. [Wife] further introduced evidence of Articles of Organization of the [Gardner LLC]. [Husband] offered no evidence that there was still an existing [Gardner LLC] entity, any assets of the entity, or whether this note with Simmons Bank was still a debt of this entity, or of [Express Care] or of [Husband] individually. [Husband] introduced Exhibit 10 with a proposed loan existing in the amount of $95,231.20 owed by [Gardner LLC]. [Husband] introduced Exhibit 11 with a proposed loan owed by [Gardner LLC] in the amount of $340,000.00. There was some evidence of this amount being for PPP and that amount will be forgiven. [Wife] introduced Exhibit O which was the P & L from [Express Care] ending in 2021 which showed PPP Loan Forgiveness. Because of the discrepancies, the [c]ourt inquired very briefly on why the Exhibits of purposed [sic] loan liability owed by [Husband] did not match his income tax returns for [Express Care] tax return. [Husband] was unable to answer the courts questions with little to no facts for a $340,000 loan. As there were no notes introduced at trial, [Husband] could not accurately testify as to terms of the note, the loan documentation was conflicting with the [Express Care] tax return, no banker or [Husband's] accountant testified to the note or offer any financials proving there was such a debt, the [c]ourt finds that the evidence on the notes owed by [Husband] were not credible. The [c]ourt will use the loan amounts documented on the [Express Care] 2021 tax return as the loan amounts to calculate in the distribution of marital assets and liabilities.

---

[5] The trial court noted that Wife agreed to a downward deviation from the guidelines, because Husband had agreed to pay all educational and medical expenses for the minor children.

The trial court valued Wife's marital property at $275,936.21 and assigned her marital debt in the amount of $7,000. The trial court found Wife's net marital property totaled $268,936.21.

The trial court valued Husband's marital property at $1,500,372.70 and assigned him a marital debt in the amount of $85,423. In calculating Husband's marital property, the trial court valued Express Care at $577,684 and Express Care's bank account at $725,952.39, plus the value of the vehicles, minus the debts on the vehicles, for a total value of $1,307,485. The trial court found Husband's net marital property totaled $1,414,949.70 and ordered Husband to pay Wife $575,006.74 for property equalization.

In January 2023, Husband timely filed another post-trial motion.[6] This post-trial motion requested the trial court reopen and amend its judgment to calculate child support and an overnight credit for one child, rather than two, alleging his oldest daughter had married after the amended judgment had been entered, and she was therefore now emancipated. Husband also reiterated his argument from the first post-trial motion that the 2017 Loan and 2020 Loan were improperly excluded from the trial court's calculation of Husband's marital property and debt. The trial court declined to amend its amended judgment. This appeal followed.

---

[6] Rule 75.01 states: "The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time."

9

**Discussion**

*Point 1: Motion for New Trial based on New Evidence of Daughter's Emancipation*

Husband's point 1 argues the trial court abused its discretion in denying his post-trial motion for a new trial because he had new evidence that his oldest daughter had married, which would have made her emancipated under Missouri law.[7]

"The trial court has wide discretion in ruling on a motion for a new trial and is vested with substantial discretion over matters of fact in ruling on new trial motions." ***Higgins v. Star Elec., Inc.***, 908 S.W.2d 897, 903 (Mo. App. W.D. 1995). An abuse of discretion occurs only when the trial court's ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." ***Steele v. Steele***, 423 S.W.3d 898, 904 (Mo. App. S.D. 2014) (quoting ***Souci v. Souci***, 284 S.W.3d 749, 754 (Mo. App. S.D. 2009)).

Rule 78.01 allows the trial court to grant a new trial of any issue "upon good cause shown." A party seeking a new trial on the basis of new evidence must show:

> (1) that the evidence has come to [his] knowledge since the trial; (2) that the failure of the evidence to come to [his] knowledge sooner was not the result of a lack of due diligence; (3) that the evidence is so material that it would probably produce a different result if a new trial were granted; (4) that the evidence is not cumulative only; (5) that the parties' affidavit should be produced, or its absence be accounted for; and (6) that the object of the evidence is not merely to impeach the character or credibility of a witness.

---

[7] While both points 1 and 2 pertain to the evidence of Husband's oldest daughter's marriage, point 1 addresses the legal principles applicable to a denial of a motion for a new trial based on newly discovered evidence while point 2 addresses the legal principles applicable to a denial of a motion to reopen the evidence. The legal principles that apply to evaluating whether a trial court abused its discretion in denying a motion for new trial based on new evidence is different than the legal principles applicable to a claim that the trial court abused its discretion in denying a motion to reopen the evidence. Because point 2 fails for the same reasons discussed in points 3 and 4, which are challenges to the trial court's denial of a motion to reopen evidence rather than the failure to grant a new trial, we address point 2 in our discussion of points 3 and 4.

10

*Hagen v. Harris*, 680 S.W.3d 529, 535 (Mo. App. E.D. 2023) (quoting *Pijanowski v. Pijanowski*, 272 S.W.3d 321, 324 (Mo. App. W.D. 2008)).

Under section 452.340.3(2), unless the circumstances of the child dictate otherwise or the court specifically so provides, a parent's obligation to make child support payments shall terminate when the child marries.[8] The statute further provides:

> 12.(3) The obligation shall be deemed terminated without further judicial or administrative process when the parent paying child support files a sworn statement or affidavit with the court which entered the order establishing the child support obligation, or the family support division for an order entered under section 454.470, stating that the child is emancipated and reciting the factual basis for such statement; which statement or affidavit is served by the court or division, as applicable, on the child support obligee; and which is either acknowledged and affirmed by the child support obligee in writing, or which is not responded to in writing within thirty days of receipt by the child support obligee;

> 12.(4) The obligation shall be terminated as provided by this subdivision by the court which entered the order establishing the child support obligation, or the family support division for an order entered under section 454.470, when the parent paying child support files a sworn statement or affidavit with the court which entered the order establishing the child support obligation, or the family support division, as applicable, stating that the child is emancipated and reciting the factual basis for such statement; and which statement or affidavit is served by the court or division, as applicable, on the child support obligee. If the obligee denies the statement or affidavit, the court or division shall thereupon treat the sworn statement or affidavit as a request for hearing and shall proceed to hear and adjudicate such request for hearing as provided by law; provided that the court may require the payment of a deposit as security for court costs and any accrued court costs, as provided by law, in relation to such request for hearing. When the division receives a request for hearing, the hearing shall be held in the manner provided by section 454.475.

---

[8] All statutory citations are to RSMo (2016).

§ 452.340.12. "The court may enter a judgment terminating child support pursuant to subdivisions (1) to (3) of subsection 12 of this section without necessity of a court appearance by either party." § 452.340.13.

Here, the trial court did not abuse its discretion in denying Husband's motion for a new trial to consider new evidence of the oldest daughter's emancipation because no new trial was needed to terminate Husband's obligation to pay child support on the (presumptively) now-emancipated child. Section 452.340 establishes the procedure for Husband to follow to have the trial court enter a judgment terminating his child support obligation. That procedure does not require a new trial for the admission of new evidence but merely requires Husband to file a sworn statement or affidavit in accordance with section 452.340. Furthermore, Husband's motion alleged no new additional evidence that would change his obligation to pay child support at the time the amended judgment was entered, since child was not yet married, and the judgment itself only obligated Father to pay such support "until further order of court *or the children are no longer eligible for support under Missouri law*" (emphasis added). Both the amended judgment and section 452.340 contemplate events of a child's emancipation and section 452.340 establishes a clear procedure for Husband to follow to notify the trial court of the emancipation. That procedure does not require setting aside the previous judgment, conducting a new trial, and entering a new judgment, which would be judicially inefficient and costly to the parties.

Finally, the cases Husband relies on, ***Anderson v. Anderson***, and ***Grogan v. Grogan***, are distinguishable from the facts before us. In both of those cases, a parent was seeking a modification or recalculation of the amount to be paid as child support based on newly discovered evidence rather than a termination of the obligation to pay

child support based on the child becoming emancipated. ***Anderson***, 854 S.W.2d 32 (Mo. App. W.D. 1993); ***Grogan***, 618 S.W.3d 678 (Mo. App. S.D. 2021). In those cases, filing a motion to modify the child support obligation would have resulted in additional filing fees, delay, increased attorney's fees, and the continuing additional child support obligation incurred by the parent during the pendency of the new motion until it could be heard. But a party seeking to *terminate* his or her child support obligation faces no such concerns. By virtue of section 452.340, the obligation is "deemed terminated without further judicial or administrative process when the parent paying child support files a sworn statement or affidavit with the court which entered the order establishing the child support obligation" and the court may enter a judgment terminating the obligation without an appearance by either party. § 452.340.12(3); § 452.340.13. Because the costs and delay associated with filing a motion to modify are not implicated when a party seeks to terminate his or her obligation to pay child support pursuant to section 452.340, ***Anderson*** and ***Grogan*** are distinguishable. Husband's point 1 is denied.

*Points 2-4: Denying the Motion to Reopen the Evidence*

In points 2 through 4, Husband argues the trial court abused its discretion in denying his post-trial motion seeking to reopen the evidence regarding his oldest daughter's marriage (point 2), and regarding the 2017 Loan (point 3), and the 2020 Loan (point 4).[9] In each of these points, Husband argues the trial court abused its discretion in denying his post-trial motion because granting the motion would not have

---

[9] We point out that the additional evidence regarding the loans Husband referred to in his post-trial motion did *not* include any promissory note. Instead, it was a notarized letter from the bank president indicating that Gardner LLC was expected to repay the debt. Again, it did not identify Husband individually as being responsible for the debt.

inconvenienced the trial court or have caused an unfair advantage to one of the parties. At the outset, we note that Husband likens his post-trial motion to a motion to reopen the evidence. "[A] motion to reopen the evidence is normally filed after a case has been submitted to the circuit court, but *before* judgment is entered." **Williams v. Williams**, 669 S.W.3d 708, 715 (Mo. App. E.D. 2023) (emphasis added). In fact, "[a] motion to reopen is most often made when a plaintiff has rested and is facing a directed verdict." 16 Mo. Prac., Civil Rules Practice § 69.01(a): 4.5 (2023 ed.). But Husband's "motion to reopen" evidence was filed *after* the judgment had been entered. This procedural fact is fatal to Husband's argument and distinguishes it from the cases on which Husband relies.

"We review a trial court's ruling on a request to reopen the evidence for an abuse of discretion." **In re Marriage of Hall**, 645 S.W.3d 701, 703 (Mo. App. S.D. 2022). "It is the appellant's burden to persuade us that the circuit court abused its discretion and that the abuse resulted in prejudice." **Kehrer Bros. Constr., Inc. v. Gire**, 453 S.W.3d 820, 825 (Mo. App. S.D. 2014) (quoting **KC Excavating and Grading, Inc. v. Crane Constr. Co.**, 141 S.W.3d 401, 408 (Mo. App. W.D. 2004)). "When there is no inconvenience to the court or unfair advantage to one of the parties, it is an abuse of discretion for a trial court to refuse to permit the introduction of material evidence which might substantially affect the merits of the case." **Hall**, 645 S.W.3d at 703.

In the case relied on by Husband, **In re Estate of Mapes**, 738 S.W.2d 853 (Mo. banc 1987), the motion to reopen the evidence "was made prior to the granting of a directed verdict, and, at a time when the jury and witnesses were readily available[,]" so there was no inconvenience to the trial court to hear additional evidence. **Id.** at 856. Here, that is not the case. The request to reopen the evidence was made *after* the trial

14

had concluded and judgment had been entered. Requiring the trial court to reopen the evidence *after* it entered judgment would inconvenience the court because it would require the court to set aside its judgment, conduct an evidentiary hearing where the additional evidence is offered, make new findings on the additional evidence, and enter a new judgment. Husband has failed to demonstrate the trial court abused its discretion in denying his motion to reopen the evidence as to both loans and as to daughter's emancipation by marriage. Points 2-4 are denied.

*Points 5 and 6:  Not-Supported by Substantial Evidence and Against-the-Weight-of-the-Evidence Challenges (the 2017 Loan)*

Points 5 and 6 claim the trial court erred "by not including the [2017 Loan] as a valid marital debt and deducting said debt from Husband's gross marital assets" because there was no substantial evidence to support the exclusion of that debt (point 5) and the exclusion of that debt was against the weight of the evidence (point 6) "in that the court relied on tax returns and profit and loss statements of [Express Care], which did not show the debt because [Express Care] is not the debtor of the loan." Both of these arguments fail because Husband bore the burden of proving the debt was marital debt, which he failed to do, and he ignores the trial court's specific credibility determination that his testimony and his evidence regarding the debt lacked credibility.

"In a dissolution case, this Court will affirm the trial court's decision unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." **Steele**, 423 S.W.3d at 904. "A claim that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence necessarily involves review of the trial court's factual

15

determinations."[10] ***Lewis v. Lewis***, 671 S.W.3d 734, 738 (Mo. App. W.D. 2023)

(quoting ***Schaffer v. Howard***, 624 S.W.3d 379, 383 (Mo. App. W.D. 2021)).

In reviewing whether the trial court's judgment is supported by substantial

evidence, we view the evidence in the light most favorable to the judgment. ***Day v.***

***Hupp***, 528 S.W.3d 400, 411 (Mo. App. E.D. 2017). In doing so, we "accept as true the

evidence and inferences favorable to the trial court's judgment and disregard all

contrary evidence." ***Id.*** Furthermore, because the trial court is free to believe any, all,

---

[10] A not-supported-by-substantial-evidence challenge requires the completion of three sequential steps. The appellant must:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,
>
> (3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

An against-the-weight-of-the-evidence challenge requires completion of four sequential steps. The appellant must:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all favorable evidence in the record supporting the existence of that proposition;
>
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
>
> (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

***In re Marriage of Chorum***, 469 S.W.3d 484, 489-90 (Mo. App. S.D. 2015).

or none of the evidence presented at trial, we defer to the trial court's credibility

determinations. *Id.*

Likewise, in reviewing an against-the-weight-of-the-evidence challenge, we defer

to the trial court's findings of fact when the factual issues are contested and when the

facts as found by the trial court depend on credibility determinations. *Id.*

> The trial court is in a position to judge directly not only the demeanor of witnesses, but also their sincerity, character, and other trial intangibles that the record may not completely reveal. Accordingly, the against-the-weight-of-the-evidence standard of review takes into consideration which party has the burden of proof and that the trial court is free to believe all, some, or none of the evidence offered to prove a contested fact.

*Id.* (internal citation omitted).

> Notably, in an against-the-weight-of-the-evidence challenge, this Court considers certain evidence contrary to the judgment in the third and fourth steps of the analytical sequence, pursuant to *Houston*—i.e., where the appellant demonstrates: (1) the evidence was offered by a party with no burden of proof as to the ultimate issue for which that evidence was offered; (2) the efficacy of that evidence is not based on a credibility determination; and (3) the evidence is uncontested, uncontradicted, and not disputed in any manner. Where these elements are satisfied, there is no credibility determination for the trial court to make—rather, the only task for the trial court (and this Court) is to determine the legal effect of such evidence.

*Interest of J.X.B.*, 610 S.W.3d 720, 731 (Mo. App. S.D. 2020) (internal citation

omitted).

Husband's arguments in points 5 and 6 are without merit because they fail to

account for the trial court's fact-findings and credibility determinations. Husband, as

the party claiming the loan was a marital debt, bore the burden of proving the existence

of the debt. *See Gryder v. Gryder*, 129 S.W.3d 467, 472 (Mo. App. S.D. 2004). Since

no promissory notes were offered into evidence, the existence of the debts, including the

terms of repayment and who was obligated to repay the debt, were dependent on the

trial court finding Husband's testimony and evidence of the debts credible.[11] *See id.* at 471-72 ("The trial court was 'not compelled to believe [Husband's] testimony about the existence or amount of the alleged debt.'").  The trial court expressly found Husband's testimony and evidence of the SBA loans lacked credibility.  Husband did not produce any promissory note evidencing the 2017 Loan, offered no explanation as to why the promissory note was not introduced, and provided confusing and unclear testimony about his obligations under the loans.  While Husband offered some printouts related to a 2017 debt, those printouts listed Gardner LLC as the obligor—not Husband nor Wife, and showed accrued interest and total interest as $0.00.  The trial court found Husband did not establish the 2017 Loan was a marital debt.  Husband fails to show that this finding was not supported by substantial evidence or was against the weight of the evidence.  Points 5 and 6 are denied.

*Point 7:  Valuation of Express Care*

In point 7, Husband argues the trial court erred in valuing Express Care at $1,307,485 because there was no substantial evidence to support that valuation, in that the only evidence presented at trial established the business owned a bank account, 3 motor vehicles, and various tangible office assets.  Aside from citing **Houston v. Crider** for the analytical framework for presenting a not-supported-by-substantial-evidence challenge, Husband fails to direct us to any other case law relevant to this issue.  Instead, Husband argues in conclusory fashion:

> The only evidence before the trial court presented by Wife was the total assets and shareholder equity at the end of 2020 total $577,684.00.  There is no probative value in this evidence as it referenced the value as of December 31, 2020, just shy of two years form [sic] the date of the

---

[11] While the DR Form submitted by the parties showed Husband had a debt in the amount of $93,970, all of the exhibits at trial showed it was Gardner LLC—rather than Husband—listed as the obligor.

Amended Judgment. The trial court grossly overvalued the company and simply added the shareholder equity in 2020, the business checking account balance at the date of trial, the value of the three vehicles, and then subtracted the debts on the vehicles. No other explanation or findings were offered in the trial court's Amended Judgment of Dissolution of Marriage.

By failing to cite to relevant authority, Husband fails to demonstrate why the trial court's valuation of the company was not supported by substantial evidence. Such authority is important because "[t]here are a number of various valuation methodologies which fall within one of the following broad categories: (1) earning approach; (2) liquidation ("underlying asset") approach; and (3) comparable sale approach." *Wood v. Wood*, 361 S.W.3d 36, 39 (Mo. App. E.D. 2011) (quoting F. Hodge O'Neal & Robert B. Thompson, Close Corporations & LLCs: Law & Practice § 7.26 (3rd ed.2000)). Based on Husband's argument, we cannot tell which valuation methodology he claims the trial court should have used, let alone why the methodology used by the trial court was an error.

The trial court added the 2020 shareholder equity value of the company with the value of the bank account, the value of the vehicles, minus the vehicle debt. Husband does not bother to explain the legal error in using this calculation other than there is "no probative value in this evidence as it referenced the value as of December 31, 2020, just shy of two years form [sic] the date of the Amended Judgment." "Mere conclusions and the failure to develop an argument with support from legal authority preserves nothing for review." *Bennett v. Taylor*, 615 S.W.3d 96, 100 (Mo. App. E.D. 2020) (quoting *Porter v. Santander Consumer USA, Inc.*, 590 S.W.3d 356, 358 (Mo. App. E.D. 2019)). Because Husband's argument fails to show how the relevant principles of law

19

and facts of this case interact, Husband's point preserves nothing for our review.  Point 7 is denied.

## Conclusion

The trial court's judgment is affirmed.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

DON E. BURRELL, J. – CONCURS